COOK *v.* TAIT, UNITED STATES COLLECTOR OF INTERNAL REVENUE FOR THE DISTRICT OF MARYLAND.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

No. 220.   Argued April 15, 1924.—Decided May 5, 1924.

Congress has power to tax the income received by a native citizen of the United States domiciled abroad from property situated abroad. P. 54.

286 Fed. 409, affirmed.

ERROR to a judgment of the District Court, dismissing on demurrer an action to recover money paid, under protest, as income taxes.

*Mr. Charles Claflin Allen, Jr.,* and *Mr. Charles Claflin Allen,* with whom *Mr. Frederic N. Watriss* was on the briefs, for plaintiff in error.

I. Congress has no power to impose a tax upon income received by a native citizen of the United States who was at the time when the income was received permanently resident and domiciled in the Republic of Mexico, when such income was derived solely from real and personal property permanently located at all times with-

out the territorial jurisdiction of the United States and solely within the territorial jurisdiction of the Republic of Mexico.

A. This proposition involves solely the question of the power to levy the tax and not the mode of its exercise. *Veazie Bank* v. *Fenno,* 8 Wall. 533; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429; 158 U. S. 601; *Brushaber* v. *Union Pac. R. R. Co.,* 240 U. S. 1; *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103; *Eisner* v. *Macomber,* 252 U. S. 189; *Peck & Co.* v. *Lowe,* 247 U. S. 165; *Evans* v. *Gore,* 253 U. S. 245; *Nicol* v. *Ames,* 173 U. S. 509; *United States* v. *Phellis,* 257 U. S. 156.

B. The power of taxation, inherent in sovereignty, is limited to the territorial jurisdiction of the sovereign, and the attempt to impose a tax upon property, persons or business beyond that jurisdiction is void. I Cooley, Taxation, p. 249; *McCulloch* v. *Maryland,* 4 Wheat. 316; *United States* v. *Rice,* 4 Wheat. 247; *Loughborough* v. *Blake,* 5 Wheat. 317; *State Tax on Foreign-Held Bonds,* 15 Wall. 300; *Dewey* v. *Des Moines,* 173 U. S. 193; *De Lima* v. *Bidwell,* 182 U. S. 1; *United States* v. *Hayward,* 2 Gall. 485; *St. Louis* v. *The Ferry Co.,* 11 Wall. 423; *Tappan* v. *Merchants' National Bank,* 19 Wall. 490; *Louisville Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194.

(1) The subject of the tax is the right to the rents and profits from the property realized in the shape of income; this is a property right having its situs in the Republic of Mexico. *Dobbins* v. *Commissioners of Erie County,* 16 Pet. 435; *Maguire* v. *Trefry,* 253 U. S. 12; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429; 158 U. S. 601; *Brushaber* v. *Union Pac. R. R. Co.,* 240 U. S. 1; *Gillespie* v. *Oklahoma,* 257 U. S. 501; *Greiner* v. *Lewellyn,* 258 U. S. 384; *Eisner* v. *Macomber,* 252 U. S. 189; *Evans* v. *Gore,* 253 U. S. 245; Revenue Act of 1921, § 210; Sixteenth Amendment; *Nicol* v. *Ames,* 173 U. S. 509; *The Exchange,* 7 Cr. 116; *Selliger* v. *Kentucky,* 213 U. S. 200;

*Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Louisville Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Thirty Hogsheads of Sugar* v. *Boyle,* 9 Cr. 191; *United States* v. *Rice,* 4 Wheat. 247; *Fleming* v. *Page,* 9 How. 603.

(2) The person of plaintiff in error is not within the jurisdiction of the United States for purposes of taxation. See authorities cited *supra,* under B(1).

(3) Citizenship of a native American is neither property nor a privilege granted by Congress and therefore cannot afford any basis for the tax in the instant case. *United States* v. *Rice,* 4 Wheat. 247; *Downes* v. *Bidwell,* 182 U. S. 282; *Collector* v. *Day,* 11 Wall. 113; *Louisville Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Shaffer* v. *Carter,* 252 U. S. 37; Const., Art. I, § 8, par. 1; Art. I, § 2, cl. 3; Art. I, § 9, cl. 4; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Loan Association* v. *Topeka,* 20 Wall. 655; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429; Moore, American Notes to Dicey on Conflict of Laws, pp. 783, 800.

C. The United States not having the power to impose the tax, its imposition and collection is a mere extortion under the guise of taxation and violates the rights of the plaintiff in error guaranteed him under the Fifth Amendment. *State Tax on Foreign-Held Bonds,* 15 Wall. 300; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Shaffer* v. *Carter,* 252 U. S. 37; *Dewey* v. *Des Moines,* 173 U. S. 193.

D. The tax is in violation of the natural and inherent rights of plaintiff in error and is contrary to the rights reserved—independently of citizenship—by the first ten amendments to the Constitution, and especially the Fifth, Ninth and Tenth Amendments. *Downes* v. *Bidwell,* 182 U. S. 282; *Fong Yue Ting* v. *United States,* 149 U. S. 715.

II. The tax assessed is not within the statute.

A. The statute does not contain express declaration of authority to impose the tax and will be strictly construed in favor of the taxpayer. Revenue Act, 1921, § 210, 42

Stat. 233; Revenue Act, 1913, § 2–A, Subdiv. 1, 38 Stat. 166; Revenue Act, 1916, § 1–A, 39 Stat. 756; Revenue Act, 1918, § 210, 40 Stat. 1057; *Mutual Benefit Life Ins. Co.* v. *Herold,* 198 Fed. 199; s. c., 201 Fed. 918; *Eidman* v. *Martinez,* 184 U. S. 578; *United States* v. *Goelet,* 232 U. S. 293.

B. The statute must be construed as including only property and persons within the constitutional power of Congress to reach, so as to keep the statute in harmony with the Constitution. *McCullough* v. *Virginia,* 172 U. S. 102; Sedgwick, Construction (Pomeroy), 2d ed., p. 206.

*Mr. Solicitor General Beck* for defendant in error.

I. The Constitution confers on Congress a broad power to lay and collect taxes.

Referring to this power, this Court said in the *License Tax Cases,* 5 Wall. 462: " It is given in the Constitution with only one exception and only two qualifications. Congress can not tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity. Thus limited, and thus only, it reaches every subject, and may be exercised at discretion."

The rule announced in these cases was restated and affirmed in *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429. To the same effect are *Nicol* v. *Ames,* 173 U. S. 509; *Knowlton* v. *Moore,* 178 U. S. 41; and *Flint* v. *Stone Tracy Co.,* 220 U. S. 107. See *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1.

II. The tax imposed on the plaintiff is not unconstitutional because it applies to income from property outside of the United States.

This Court has decided (*Brushaber Case, supra*) that even before the adoption of the Sixteenth Amendment Congress might tax all property and the income from all property. *Stanton* v. *Baltic Mining Co.,* 240 U. S. 103.

All taxes are personal obligations of the citizen, even though measured in amount by his property or the income

thereof.   Taxes are not imposed upon property as such but upon its owner.

The contention that taxing the income is not authorized by the Sixteenth Amendment, if well founded, would apply equally to a citizen residing in the United States, and deriving his entire income from sources outside of the United States; and yet unquestionably Congress has such power of taxation over citizens residing within the United States.   How can the duty of the citizen to support the government which protects him depend upon his place of residence?   Wherein does the Constitution impose such a limitation upon the power of Congress to tax?

The Sixteenth Amendment made it immaterial whether income were or were not derived from property.

III. The courts have clearly indicated that Congress may tax the income of one who is subject to its jurisdiction, although that income is derived from sources outside of the United States. *Nevada Bank* v. *Sedgwick,* 104 U. S. 111; *Memphis & Charleston R. R. Co.* v. *United States,* 108 U. S. 228; 26 R. C. L., pp. 85, 86; *United States* v. *Erie Ry. Co.,* 106 U. S. 327; *United States* v. *Goelet,* 232 U. S. 293; *United States* v. *Bennett,* 232 U. S. 299; *Porto Rico Coal Co.* v. *Edwards,* 275 Fed. 104.

IV. Decisions relating to state legislation taxing persons or property beyond the borders of those States are inapplicable. *United States* v. *Bennett, supra.*

V. The jurisdiction of a national sovereign over its subjects is not confined to its territorial domain.   I Hyde, Int. Law, pp. 410–412, 423, 435–446.   Treason may be punished no matter where the treasonable acts have occurred. 35 Henry VIII, c. 2; Criminal Code, § 1.   This is also true of conspiracy, *United States* v. *Bowman,* 260 U. S. 94; of cannibalism, *Regina* v. *Dudley,* 15 Cox C. C. 624; and by English law it is true of offenses by Crown officials. 11 William III, c. 12; 42 Geo. III, c. 85, § 1.   Subjects who go to uncivilized countries take their national law with

them. I Hyde, *supra*, p. 451. Our Criminal Code (§§ 308, 309) forbids the sale of arms, liquors, or opium to the aboriginal natives of Pacific islands which are not in the possession of or under the protection of any civilized power; and an act of Congress (March 3, 1915, c. 74, §§ 1–13, 38 Stat. 817) regulates the practice of pharmacy and the sale of poisons in consular districts in China. Under treaties the United States has established consular courts for American citizens in several countries. So also, personal representatives of a sovereign, members of the diplomatic corps, carry their national law with them, and they are immune from the operation of the laws of the country to which they are sent. I Hyde, *supra*, pp. 746–763.

Counsel for the plaintiff urge that the imposition of such a tax upon him would be subversive of the sovereignty of Mexico. The rules of international law, however, indicate that there is no subversion of the sovereignty of the country when a resident alien obeys the command of his own national sovereign, unless the command of his sovereign conflicts with the command of the local sovereign.

VI. The leading text writers upon international law concede that a national sovereign has the power to impose taxes upon its nonresident citizens regardless of the sources from which such incomes are derived. I Oppenheim, Int. Law, p. 195; Bar, Int. Law, 2d ed., p. 247; Story, Conflict of Laws, 7th ed., pp. 21, 22, 682; I Westlake, Int. Law, pp. 111, 112, 206, 208; I Hyde, Int. Law, p. 362; Webster, The Law of Citizenship, 1891, pp. 167, 168.

The payment of an income tax by a nonresident citizen is looked upon as *prima facie* evidence of citizenship. The failure to pay such an income tax is, *inter alia*, of considerable weight in determining that the nonresident citizen has given up his allegiance to the United States. Borchard, Diplomatic Protection of Citizens Abroad, pp. 694–697, 706, 728 *et seq.*; Mr. Fish, Secretary of State,

to Mr. MacVeagh, December 13, 1870, Foreign Relations, 1871, pp. 887–888; *The Charming Betsy,* 2 Cr. 64.

As pointed out in *Minor* v. *Happersett,* 21 Wall. 162, a citizen owes allegiance to his nation and is entitled to its protection.

VII. The imposition of the tax is not in derogation of any rights of the plaintiff under the first ten amendments. *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1, 24; *Heald* v. *District of Columbia,* 259 U. S. 114, 124.

VIII. The Revenue Act of 1921 applies to the plaintiff.

MR. JUSTICE MCKENNA delivered the opinion of the Court.

Action by plaintiff in error, he will be referred to as plaintiff, to recover the sum of $298.34 as the first installment of an income tax paid, it is charged, under the threats and demands of Tait.

The tax was imposed under the Revenue Act of 1921, which provides by § 210 (42 Stat. 227, 233): "That, in lieu of the tax imposed by section 210 of the Revenue Act of 1918, there shall be levied, collected, and paid for each taxable year upon the net income of every individual a normal tax of 8 per centum of the amount of the net income in excess of the credits provided in section 216: *Provided,* That in the case of a citizen or resident of the United States the rate upon the first $4,000 of such excess amount shall be 4 per centum." [1]

---

[1] The following regulation, No. 62, promulgated by the Commissioner of Internal Revenue under the Revenue Act of 1921, provides in Article 3: " Citizens of the United States except those entitled to the benefits of section 262 . . . wherever resident, are liable to the tax. It makes no difference that they may own no assets within the United States and may receive no income from sources within the United States. Every resident alien individual is liable to the tax, even though his income is wholly from sources outside the United States. Every nonresident alien individual is liable to the tax on his income from sources within the United States."

Plaintiff is a native citizen of the United States and was such when he took up his residence and became domiciled in the City of Mexico. A demand was made upon him by defendant in error, designated defendant, to make a return of his income for the purpose of taxation under the Revenue Laws of the United States. Plaintiff complied with the demand, but under protest, the income having been derived from property situated in the City of Mexico. A tax was assessed against him in the sum of $1,193.38, the first installment of which he paid, and for it, as we have said, this action was brought.

The question in the case, and which was presented by the demurrer to the declaration is, as expressed by plaintiff, whether Congress has power to impose a tax upon income received by a native citizen of the United States who, at the time the income was received, was permanently resident and domiciled in the City of Mexico, the income being from real and personal property located in Mexico.

Plaintiff assigns against the power not only his rights under the Constitution of the United States but under international law, and in support of the assignments cites many cases. It will be observed that the foundation of the assignments is the fact that the citizen receiving the income, and the property of which it is the product, are outside of the territorial limits of the United States. These two facts, the contention is, exclude the existence of the power to tax. Or to put the contention another way, as to the existence of the power and its exercise, the person receiving the income, and the property from which he receives it, must both be within the territorial limits of the United States to be within the taxing power of the United States. The contention is not justified, and that it is not justified is the necessary deduction of recent cases. In *United States* v. *Bennett,* 232 U. S. 299, the power of the United States to tax a foreign built yacht owned and used during the taxing period outside of the

United States by a citizen domiciled in the United States was sustained. The tax passed on was imposed by a tariff act,[2] but necessarily the power does not depend upon the form by which it is exerted.

It will be observed that the case contained only one of the conditions of the present case, the *property* taxed was outside of the United States. In *United States* v. *Goelet,* 232 U. S. 293, the yacht taxed was outside of the United States but owned by a citizen of the United States who was " permanently resident and domiciled in a foreign country." It was decided that the yacht was not subject to the tax—but this as a matter of construction. Pains were taken to say that the question of power was determined " wholly irrespective " of the owner's " permanent domicile in a foreign country." And the Court put out of view the situs of the yacht. That the Court had no doubt of the power to tax was illustrated by reference to the income tax laws of prior years and their express extension to those domiciled abroad. The illustration has pertinence to the case at bar, for the case at bar is concerned with an income tax, and the power to impose it.

We may make further exposition of the national power as the case depends upon it. It was illustrated at once in *United States* v. *Bennett* by a contrast with the power of a State. It was pointed out that there were limitations upon the latter that were not on the national power. The taxing power of a State, it was decided, encountered at its borders the taxing power of other States and was limited by them. There was no such limitation, it was pointed

---

[2] Section 37, Tariff Act of August 5, 1909, c. 6, 36 Stat. 11, 112, provided in part as follows: " There shall be levied and collected annually on the first day of September by the collector of customs of the district nearest the residence of the managing owner, upon the use of every foreign-built yacht, pleasure-boat or vessel, not used or intended to be used for trade, now or hereafter owned or chartered for more than six months by any citizen or citizens of the United States, a sum equivalent to a tonnage tax of seven dollars per gross ton."

out, upon the national power; and the limitation upon the States affords, it was said, no ground for constructing a barrier around the United States " shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty."

The contention was rejected that a citizen's property without the limits of the United States derives no benefit from the United States. The contention, it was said, came from the confusion of thought in " mistaking the scope and extent of the sovereign power of the United States as a nation and its relations to its citizens and their relations to it." And that power in its scope and extent, it was decided, is based on the presumption that government by its very nature benefits the citizen and his property wherever found, and that opposition to it holds on to citizenship while it " belittles and destroys its advantages and blessings by denying the possession by government of an essential power required to make citizenship completely beneficial." In other words, the principle was declared that the government, by its very nature, benefits the citizen and his property wherever found and, therefore, has the power to make the benefit complete. Or to express it another way, the basis of the power to tax was not and cannot be made dependent upon the situs of the property in all cases, it being in or out of the United States, and was not and cannot be made dependent upon the domicile of the citizen, that being in or out of the United States, but upon his relation as citizen to the United States and the relation of the latter to him as citizen. The consequence of the relations is that the native citizen who is taxed may have domicile, and the property from which his income is derived may have situs, in a foreign country and the tax be legal—the government having power to impose the tax.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration or decision of this case.