## APPEAL OF JASPER Y. BRINTON.

Docket No. 4067.  Submitted December 10, 1925.  Decided March 30, 1926.

Salary of justice of the Court of Appeals of the Mixed Courts of Egypt, *held* to be subject to income tax.

*Jasper Y. Brinton* pro se.

*M. N. Fisher, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This is an appeal from the determination of a deficiency in income tax in the amount of $515.32 for the year 1923. The sole issue is whether the Commissioner erred in holding the salary paid to the taxpayer by the Egyptian Government for services as justice of the Court of Appeals of the Mixed Courts of Egypt to be taxable income.

### FINDINGS OF FACT.

The taxpayer is a citizen of the United States with residence in Philadelphia, Pa., but sojourning in Alexandria, Egypt, where he holds the office of justice of the Court of Appeals of the Mixed Courts of Egypt. The taxpayer was appointed to that office on October 31, 1921, by the Sultan (now King) of Egypt upon the nomination of the Egyptian Minister of Justice.

Under the procedure of nomination and appointment of such justices, the power entitled to representation on the Court (in this instance the United States) presents the names of three qualified persons. The Egyptian Government selects one of the three, who, when appointed, becomes an official of that Government.

The taxpayer was appointed at an initial salary of £1,600, Egyptian. Under the provisions of the law fixing the salaries of magistrates of the Mixed Courts, increases of salary occur automatically every two years in the amount of £100, Egyptian. The salary of the taxpayer for the year involved, translated into its equivalent in American exchange by the Commissioner, was $7,762.50.

The taxpayer made no return of the amount of the salary received by him from the Government of Egypt. The Commissioner added the amount of $7,762.50 to the gross income of the taxpayer as reported in his income-tax return for the taxable year, and determined a deficiency of $515.32 on such additional income.

### OPINION.

GRAUPNER: The taxpayer contends that the Revenue Act of 1921 can not fairly be interpreted as having intended to interfere with the

international engagement between the United States and the Egyptian Government, and that to tax him on his salary would be in violation of an existing treaty.engagement.

The Commissioner asserts that under the provisions of the Revenue Act of 1921 all citizens of the United States are taxable on all net income of whatever kind, except such items as are specifically exempted from taxation by section 213 (b) and other kinds of income which by statute and fundamental law are free from tax. He further asserts that, since the amount received by the taxpayer as justice of the Court of Appeals of the Mixed Courts of Egypt is not exempt by the Revenue Act or any statute or fundamental law of the United States, the salary should be included as taxable income in the 1923 return.

Under the Treaty of May 7, 1830, between the United States and the Ottoman Empire, 18 Stat., Pt. 2, p. 583, in Article IV, it was provided:

> Citizens of the United States of America, quietly pursuing their commerce, and not being charged or convicted of any crime or offence, shall not be molested; and even when they may have committed some offence they shall not be arrested and put in prison, by the local authorities, but they shall be tried by their Minister or Consul, and punished according to their offence, following, in this respect, the usage observed towards other Franks.

This treaty was the basis for the exercise by the United States of extraterritorial jurisdiction through consular courts of Egypt.

By Act of Congress approved March 23, 1874, 18 Stat., Pt. 3, p. 23, the President was authorized to accept jurisdiction of certain tribunals when organized in Ottoman dominions and Egypt and to suspend consular courts therein. This acceptance was to be evidenced by presidential proclamation and notification to the government of the Sublime Port and that of Egypt. On March 27, 1876, 19 Stat. 662, the President, by proclamation, suspended the operation of the consular courts of Egypt.

The Mixed Courts of Egypt were instituted on June 28, 1875, and began to hold sessions on February 1, 1876, after a number of the powers interested had informed the Egyptian Government that they consented to their institution for a period of five years. The consent of the United States was given subsequent to the issuance of the President's proclamation of March 27, 1876. The continuance of the Mixed Courts has been repeatedly consented to by the interested powers from time to time for varying periods. The consent of the United States to the continuance of such courts, for the various periods of extension, has been presented to the Egyptian Government through its diplomatic officer stationed at Cairo. A primary

inducement to the powers to accept the Mixed Courts was the provision of the Egyptian Government that a majority of the judges in all of the several courts making up the system should consist of foreigners whose appointments should be subject to the approval of the power to which each was accredited. In regard to the Court of Appeals, it was provided that each of the great powers, including the United States, should at all times be entitled to one justice. Egypt undertook to maintain the courts and to compensate the judges thereof.

The Reglement D'Organization Judiciare of Egypt constitutes and defines the Mixed Courts of Egypt, and it was this law which the United States recognized when it suspended the consular courts and consented to its citizens being tried in such courts. Article 5 of the Reglement, as translated, reads as follows:

Art. 5: The nomination and the choice of the judges shall remain the function of the Egyptian Government; but, in order to be reassured itself under the guarantees which the persons whom it shall choose shall present, it will address itself officially to the Ministers of Justice abroad, and will engage only the persons empowered with the acquiescence and the authorization of their government.

The practice under article 5 has been for the power entitled to representation on the Mixed Courts to suggest to the Egyptian Government, for each position to which it is entitled, the names of three qualified persons. The Egyptian Minister of Justice selects one of the three, who, when appointed, becomes an official of the Egyptian Government.

The taxpayer seeks exemption from taxation of the salary received by him as a justice of a court thus constituted and to which he was appointed in accordance with the above-described practice. We are without the advantage of brief or argument in behalf of the taxpayer, and therefore must depend upon statements contained in his petition to determine the legal source upon which he relies for relief. As an assignment of error he avers that to include his salary as justice of the Court of Appeals in taxable income would " conflict with an international engagement between the United States and Egypt." As a proposition of law he asserts that " an Act of Congress will not be construed so as to violate an existing treaty engagement in the absence of convincing proof that such was the design of that body."

There is no formal treaty or convention under which the United States recognizes or accepts the Mixed Courts of Egypt, unless it can be said that the suspension of a treaty right to ministerial and consular courts constitutes a treaty or convention, and we do not believe that this interpretation of the action of the United States is possible. The powers originally consented to the institution and

accepted the jurisdiction of the Mixed Courts for a period of only five years. The system has been continued by a series of renewals, the period of continuation being sometimes for five years, but at others only for one year, but the right to revert to the system previously in existence has been reserved and is always in suspense. Scott on the Law Affecting Foreigners in Egypt, 210. There is neither statutory nor treaty warrant for considering the taxpayer in any other capacity than that of an official of the Egyptian Government.

The taxpayer, as a justice of the Court of Appeals of the Mixed Courts of Egypt, is not entitled to exemption from tax under section 1, Article III, of the Constitution of the United States, because he is not a judge of a court created under the authority of that section. Nor is he entitled to an exemption as a judicial officer of a State under section 213 (b) of the Revenue Act of 1921, because he is not such an officer of a State of the Union. Nor, for the same reason, can he claim exemption under section 8 of Article I of the Constitution of the United States as interpreted in *The Collector* v. *Day*, 11 Wall. 113. We are unable to find any treaty or capitulary agreement between the Governments of the United States and Egypt which gives the taxpayer any right of exemption under the Revenue Act or under any statute or fundamental law.

All citizens of the United States, wherever resident, are taxable on net income, excepting on such items as are specifically exempted by the Act or are free from tax on fundamental law. *Cook* v. *Tate*, 265 U. S. 47; *Lawrence* v. *Wardell*, 270 Fed. 682; 273 Fed. 405. There is nothing in the Act to exempt from taxable income the salary paid to a citizen of the United States by a foreign government, whether such citizen is a civil or judicial officer. The mere fact that the taxpayer occupies a position which the Egyptian Government, under its Reglement, is required to fill by the appointment of an American who is nominated by a department of the Government of the United States does not, in our opinion, give him a special status and thus enable him to escape taxation on that part of his income which is salary paid by such Government.

*The deficiency is redetermined to be the amount of $515.32. Order will be entered accordingly.*