GUARANTY TRUST CO. OF NEW YORK, EXECUTOR, ESTATE OF RHOBIE CALDWELL SMALLMAN, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31846. Promulgated November 13, 1930.

W. H. *Dannat Pell, Esq.*, for the petitioner.
Lewis S. *Pendleton, Esq.*, for the respondent.

OPINION.

ARUNDELL: Decedent herein at the time of her death was a resident of the United States owning tangible property in foreign countries which property respondent has included in the gross estate. The revenue act in effect at the time of death was that of 1924, which, in section 302, provides:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *.

This language has appeared in all of the revenue acts beginning with that of September 8, 1916. On May 14, 1918, the Attorney General, in a ruling (31 Op. Attys. Gen. 287) rendered to the Secretary of the Treasury, construed the estate-tax provisions of the Revenue Act of 1916 as not intended to include in the gross estate real estate located outside the United States, and held that the provisions of the Act " may be fairly satisfied by an application to the foreign personalty." Following that ruling, respondent's Regulations No. 37, dealing with the Revenue Act of 1918, provided that real property

not situated in the United States should not be included in the gross estate, but that in the case of a resident decedent " all personal property owned by him should be included, wherever situated." (Article 13.) A similar provision has appeared in the subsequent regulations. See art. 12, Reg. 63; art. 11, Reg. 68; art. 11, Reg. 70. In view of the repeated enactments of Congress, using the same language as that of the 1916 Act, since the promulgation of the Attorney General's ruling and the construction placed on that language by the respondent's regulations, we think it must be held that Congress has acquiesced in such construction and intended in the several revenue acts to include in the gross estate such property as is here involved. This doctrine is entitled to added weight in this instance as the report of the Committee on Finance of the Senate having under consideration the Revenue Act of 1921 discloses that the Attorney General's opinion was actually considered and changes made in the law in the light thereof (p. 24, S. Rept. No. 275, 67th Cong., 1st sess.).

The petitioner urges, however, that *Frick* v. *Pennsylvania*, 268 U. S. 473, is decisive of the question before us and is authority for the proposition " that a taxing power cannot tax either real estate or tangible personal property situated outside its jurisdiction." There can be no doubt that this case is authority for the principle that tangible personal property having a permanent situs in a State other than that of the domicile of its owner may not be taxed at the owner's domicile by a State of the Federal Union. And this is true even although the tax be not directly on the property but on its transmission at the time of its owner's death.

If the question before us concerned the taxing power of a State and not of the United States, the above cited case would seem ample authority for sustaining petitioner's viewpoint, but the Supreme Court has been careful to point out the difference between the taxing power of the Federal Government and of the several States, and in *Frick* v. *Pennsylvania*, *supra*, quotes from the case of the *United States* v. *Bennett*, 232 U. S. 299, so that in reading the former decision one is put on guard that the general language used therein may not be applicable where the United States seeks to impose a tax. The *Bennett* case involved the validity of an excise tax on the use of a foreign-built yacht located without the United States and owned and used by a citizen of the United States domiciled therein. In that case the court had no difficulty in reaching the conclusion that the taxing power of the Federal Government extended to the use of tangible personal property by one of its citizens even although the property during the period for which the tax was levied had its situs beyond the territorial limits of the United States, the basis of the decision being the relation of the United States to its citizens and their relation to it, whether their property be located at home or

abroad. The *Bennett* case so clearly covers the question raised by petitioner that we feel warranted in quoting from it at length as follows:

But this has no application to the government of the United States so far as its admitted taxing power is concerned. It is coextensive with the limits of the United States: it knows no restriction except where one is expressed in or arises from the Constitution, and therefore embraces all the attributes which appertain to sovereignty in the fullest sense. Indeed, the existence of such a wide power is the essential resultant of the limitation restricting the states within their allotted spheres, for if it were not so, then government in the plenary and usual acceptation of that word would have no existence. Because the limitations of the Constitution are barriers bordering the states and preventing them from transcending the limits of their authority, and thus destroying the rights of other states, and at the same time saving their rights from destruction by the other states, in other words of maintaining and preserving the rights of all the states, affords no ground for constructing an imaginary constitutional barrier around the exterior confines of the United States for the purpose of shutting that government off from the exertion of powers which inherently belong to it by virtue of its sovereignty. But it is said in the decided cases relied upon, the principle which was announced was that the power to tax was limited by the capacity of the taxing government to afford that benefit and protection which is the true basis of the right to tax, and which causes, therefore, taxation, where such capacity to confer benefit and afford protection does not exist, to be a mere arbitrary and unwarranted burden. But here again the confusion of thought consists in mistaking the scope and extent of the sovereign power of the United States as a nation, and its relation to its citizens, and their relations to it. It presumes that government does not, by its very nature, benefit the citizen and his property wherever found. Indeed, the argument, while holding on to citizenship, belittles and destroys its advantages and blessings by denying the possession by government of an essential power required to make citizenship completely beneficial.

To the same effect is *Cook* v. *Tait*, 265 U. S. 47, wherein the court sustained the constitutionality of the Revenue Act of 1921, imposing a tax upon the income received by a citizen of the United States residing and domiciled in Mexico from real and personal property located in that country. We are accordingly of the opinion that it was the intent of Congress and also within its power to include in decedent's estate the value of the property here involved. It may be well to mention before finally disposing of this point that we assume the decedent was a citizen of the United States though the stipulated facts go no further than to state that she died a resident of New York County, New York. The respondent's argument was predicated on the fact of her citizenship and petitioner made no claim to the contrary.

Respondent conceded error in reducing the charitable bequests allowable as a deduction from the gross estate by the amount of State

inheritance tax paid. This concession relieves us from discussing this assignment of error.

Reviewed by the Board.

*Decision will be entered under Rule 50.*