T.C. Memo. 2008-71

UNITED STATES TAX COURT

EDWARD D. CLARK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11946-06.                    Filed March 19, 2008.

<u>June L. Harris</u> and <u>Ellin Vicki Palmer</u>, for petitioner.

<u>Michael W. Berwind</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined the following deficiencies and penalties with respect to petitioner's Federal income tax:

|       |            | Penalty     |
| Year  | Deficiency | Sec. 6662(a) |
|-------|------------|-------------|
| 2002  | $11,459    | $2,291.80   |
| 2003  | 12,491     | 2,498.20    |
| 2004  | 9,506      | 1,901.20    |

After concessions, the issues for decision are:

(1) Whether for the years in issue petitioner may exclude from gross income wages earned while working in international waters;

(2) whether for the years in issue petitioner may deduct at Federal per diem rates meal expenses that petitioner did not pay or incur; and

(3) whether for the years in issue petitioner is subject to accuracy-related penalties pursuant to section 6662(a).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

                    FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Scotland, the United Kingdom, when he filed his petition.

Petitioner is a citizen of the United States but resided in Scotland during the years in issue. Petitioner was employed at various times during the years in issue by Maersk Line, Ltd.

(Maersk) as a second officer aboard two of Maersk's vessels, the Able and the Invincible.  The Able is an undersea surveillance ship and was operated by Maersk under a subcontracting arrangement with the U.S. Navy and the U.S. Military Sealift Command.  The Invincible is a guided missile tracking ship and was operated by Maersk under a subcontracting arrangement with the U.S. Air Force and the U.S. Military Sealift Command.  While petitioner was at work during the years in issue, Maersk provided him with meals and lodging without charge.  Maersk did not provide petitioner with a per diem allowance for work-related meals or incidental expenses.

At all times when petitioner was working aboard either the Able or the Invincible during the years in issue, those vessels were either docked in foreign ports or sailing in international waters.  The locations of the Able and the Invincible for the periods when petitioner was employed by Maersk aboard the vessels during the years in issue are reflected below:

| Vessel | Dates | Location |
|--------|-------|----------|
| Able | 1/1/02-1/8/02 | International waters |
|  | 1/9/02-1/15/02 | Glasgow, Scotland |
|  |  |  |
| Invincible | 6/18/02-9/10/02 | Singapore |
|  | 9/11/02-9/26/02 | International waters |
|  | 9/27/02-10/09/02 | Singapore |
|  | 10/10/02-10/22/02 | International waters |
|  | 10/23/02-10/28/02 | Okinawa, Japan |
|  | 10/29/02-10/30/02 | International waters |
|  | 10/31/02-11/1/02 | Okinawa, Japan |
|  | 11/2/02-11/10/02 | International waters |
|  | 11/11/02-11/12/02 | Singapore |

|            |                   |                     |
|------------|-------------------|---------------------|
|            | 11/13/02-12/22/02 | International waters |
|            | 12/23/02-12/24/02 | Singapore           |
| Invincible | 5/23/03-5/28/03   | Sasebo, Japan       |
|            | 5/29/03-6/12/03   | International waters |
|            | 6/13/03-6/14/03   | Sasebo, Japan       |
|            | 6/15/03-6/23/03   | International waters |
|            | 6/24/03-6/25/03   | Sasebo, Japan       |
|            | 6/26/03-7/10/03   | International waters |
|            | 7/11/03-7/14/03   | Sasebo, Japan       |
|            | 7/15/03-8/13/03   | International waters |
|            | 8/14/03-8/17/03   | Sasebo, Japan       |
|            | 8/18/03-9/11/03   | International waters |
|            | 9/12/03-11/3/03   | Singapore           |
|            | 11/4/03-11/5/03   | International waters |
|            | 11/6/03-11/20/03  | Singapore           |
|            | 11/21/03-12/8/03  | International waters |
|            | 12/9/03-12/12/03  | Singapore           |
| Invincible | 6/17/04-7/1/04    | Jabel Ali, U.A.E.   |
|            | 7/2/04-7/2/04     | Bahrain             |
|            | 7/3/04-7/14/04    | International waters |
|            | 7/15/04-7/25/04   | Bahrain             |
|            | 7/26/04-9/4/04    | International waters |
|            | 9/5/04-9/13/04    | Singapore           |
|            | 9/14/04-9/14/04   | International waters |
|            | 9/15/04-9/16/04   | Singapore           |
| Invincible | 10/25/04-10/29/04 | Bahrain             |
|            | 10/30/04-11/3/04  | International waters |
|            | 11/4/04-11/14/04  | Jebel Ali, U.A.E.   |
|            | 11/15/04-12/15/04 | International waters |
|            | 12/16/04-12/21/04 | Bahrain             |

Between September 16 and October 25, 2004, petitioner was on paid sick leave from Maersk and was recuperating in Singapore, where the Invincible was docked when petitioner became ill, and at home in Scotland. During 2002 petitioner worked in international waters for a total of 88 days and in foreign ports for a total of 117 days. During 2003 petitioner worked in international waters for a total of 115 days and in foreign ports for a total of 89

days.  During 2004 petitioner worked a total of 90 days in international waters and in foreign ports for a total of 92 days. Petitioner was not employed in the United States at any time during the years in issue.

Petitioner filed Federal income tax returns for 2002, 2003, and 2004 and attached to them Forms 2555-EZ, Foreign Earned Income Exclusion, claiming that all of his income in those years was foreign earned income excluded from gross income under section 911 for Federal income tax purposes.  On his 2002 return petitioner reported $20 in taxable interest and $63,641.48 in gross wages consisting of:

| | |
|---|---|
| Wage income (Maersk) | $42,235.06 |
| Military retirement pay | 14,903.64 |
| Vacation pay | 6,502.78 |
| Total | 63,641.48 |

On his 2003 return petitioner reported gross wages of $70,510.66 consisting of:

| | |
|---|---|
| Wage income (Maersk) | $46,295.42 |
| Military retirement pay | 15,106.20 |
| Vacation pay | 9,078.35 |
| Interest income | 30.69 |
| Total | 70,510.66 |

Petitioner received additional interest income of $31 in 2003 that he failed to report.  On his 2004 return petitioner reported $50 in taxable interest and gross wages of $58,992 consisting of:

| | |
|---|---|
| Wage income (Maersk) | $42,567.40 |
| Military retirement pay | 6,365.93 |
| Vacation pay | 10,058.67 |
| Total | 58,992.00 |

Petitioner received an additional $9,051 of military retirement pay in 2004 that he failed to report.  Petitioner has conceded that the interest income and U.S. military retirement pay he received in the years in issue are not excludable as foreign earned income.

Petitioner's earned income for the years in issue consists of wage income and vacation pay.  The amount of petitioner's earned income for each of the years in issue is:

| Year | Total Earned Income |
|------|---------------------|
| 2002 | $48,737.84 |
| 2003 | 55,373.77 |
| 2004 | 52,626.07 |

OPINION

Income Earned in International Waters

U.S. citizens are generally taxed on their worldwide income unless a specific exclusion applies.  Sec. 61(a) ("gross income means all income from whatever source derived"); Cook v. Tait, 265 U.S. 47, 56 (1924); Specking v. Commissioner, 117 T.C. 95, 101-102 (2001), affd. sub nom. Umbach v. Commissioner, 357 F.3d 1108 (10th Cir. 2003), affd. sub nom. Haessly v. Commissioner, 68 Fed. Appx. 44 (9th Cir. 2003).

Section 911(a) provides in relevant part that a qualified individual may elect to exclude, subject to limitations set forth in section 911(b)(2), his or her foreign earned income from gross income.  Section 911(b)(1)(A) defines an individual's "foreign

earned income" as "the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual".

"A legislative regulation is made pursuant to a specific grant of authority, often without precise congressional guidance, to define a statutory term or prescribe a method of executing a statutory provision." Coca-Cola Co., & Includible Subs. v. Commissioner, 106 T.C. 1, 19 (1996). Legislative regulations are entitled to Chevron deference and are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-844 (1984). The regulations promulgated under the specific delegation of authority by Congress in section 911(d)(9) provide the following definition of a "foreign country" for purposes of the foreign earned income exclusion under section 911:

> (h) Foreign country. The term "foreign country" when used in a geographical sense includes any territory under the sovereignty of a government other than that of the United States. It includes the territorial waters of the foreign country (determined in accordance with the laws of the United States), the air space over the foreign country, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the foreign country and over which the foreign country has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources.

Sec. 1.911-2(h), Income Tax Regs.

Petitioner does not challenge the validity of the regulation defining a "foreign country" for purposes of section 911 primarily as any territory under the sovereignty of a Government other than that of the United States.  Under general principles of international law, international waters are not under the sovereignty of any nation.  United States v. Louisiana, 394 U.S. 11, 23 (1969).  Thus, international waters are not a "foreign country" for purposes of section 911, and income petitioner earned while traveling in international waters is not "foreign earned income" excludable from gross income.  See Plaisance v. United States, 433 F. Supp. 936, 938-939 (E.D. La. 1977).

Without addressing or challenging the regulatory definition of "foreign country" under section 1.911-2(h), Income Tax Regs., petitioner argues that we should read section 911 in conjunction with the general sourcing rules under section 863(c) and conclude that petitioner's income earned while traveling in international waters is foreign source income.  Section 863(c) provides special sourcing rules for certain transportation income when that transportation begins or ends in the United States or one of its possessions.  Because U.S. citizens are subject to tax on their worldwide income, sourcing rules are generally not relevant to U.S. citizens.  See Great-West Life Assur. Co. v. United States, 230 Ct. Cl. 477, 678 F.2d 180, 183 (1982); sec. 1.1-1(b), Income Tax Regs.

Even if general sourcing rules were applicable in this case to override the plain meaning of section 911 and the regulations, section 863(c) would not apply to petitioner's situation because his voyages neither began nor ended in the United States or one of its possessions.  Rather, section 863(d) would require petitioner to include income earned in international waters as income from "ocean activities" sourced in the United States.  See Arnett v. Commissioner, 473 F.3d 790, 797 (7th Cir. 2007), affg. 126 T.C. 89 (2006).  Section 863(d) provides, in relevant part, as follows:

> SEC. 863(d).  Source Rules for Space and Certain Ocean Activities.--
>
> > (1) In general.--Except as provided in regulations, any income derived from a space or ocean activity--
> >
> > > (A) if derived by a United States person, shall be sourced in the United States * * *
> >
> > *     *     *     *     *     *     *
> >
> > (2) Space or ocean activity.--For purposes of paragraph (1)--
> >
> > > (A) In general.--The term "space or ocean activity" means--
> > >
> > > *     *     *     *     *     *     *
> > >
> > > > (ii) any activity conducted on or under water not within the jurisdiction (as recognized by the United States) of a foreign country, possession of the United States, or the United States.
> >
> > *     *     *     *     *     *     *

(B) Exception for certain activities.--
The term "space or ocean activity" shall not
include--

(i) any activity giving rise to
transportation income (as defined in
section 863(c))

For purposes of the Internal Revenue Code, the definition of "United States person" includes any citizen of the United States. Sec. 7701(a)(30)(A). Although he resides in Scotland, petitioner is a U.S. citizen. His income earned in international waters is income from a "space or ocean activity" as defined in section 863(d)(2). Thus, that income is sourced in the United States. Sec. 863(d)(1)(A).

While petitioner may, as the parties have stipulated, exclude income earned in foreign ports from gross income, his income earned while working in international waters does not constitute foreign earned income for purposes of the exclusion under section 911 and must be included in his gross income for the years in issue.

Meal Expense Deductions

Section 162 permits taxpayers to deduct all ordinary and necessary business expenses paid or incurred during the taxable year and specifically includes traveling expenses (including amounts expended for meals and lodging other than amounts that are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business. Sec. 162(a)(2).

Section 274(d) generally disallows any deduction under section 162 for, among other things, "any traveling expense (including meals and lodging while away from home)" unless the taxpayer complies with stringent substantiation requirements as to the amount, time and place, and business purpose of the expense. Sec. 274(d)(1). Section 274(d) authorizes the Secretary to provide by regulations that some or all of these substantiation requirements "shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations."

Under the applicable section 274 regulations, the Commissioner is authorized to prescribe rules under which optional methods of computing expenses, including per diem allowances for ordinary and necessary expenses for traveling away from home, may be regarded as satisfying the substantiation requirements of section 274(d). Sec. 1.274-5(j), Income Tax Regs. Under this authority, the Commissioner issued Rev. Proc. 2001-47, 2001-2 C.B. 332 (applicable to petitioner's travel January through September 2002); Rev. Proc. 2002-63, 2002-2 C.B. 691 (applicable to petitioner's travel October 2002 through October 2003); Rev. Proc. 2003-80, 2003-2 C.B. 1037 (applicable to petitioner's travel November 2003 through September 2004); and Rev. Proc. 2004-60, 2004-2 C.B. 682 (applicable to petitioner's travel October through December 2004) (collectively, the

applicable revenue procedures).  Under the applicable revenue procedures, taxpayers may elect to use, in lieu of substantiating actual expenses, certain authorized methods for deemed substantiation of employee lodging, meal, and incidental expenses incurred while traveling away from home.  Rev. Proc. 2002-63, sec. 1, 2002-2 C.B. at 691; Rev. Proc. 2003-80, sec. 1, 2003-2 C.B. at 1037; and Rev. Proc. 2004-60, sec. 1, 2004-2 C.B. at 682, each provide the following introduction:

SECTION 1.  PURPOSE

This revenue procedure updates * * * [the previous revenue procedure relating to per diem allowances] by providing rules under which the amount of ordinary and necessary business expenses of an employee for lodging, meal, and incidental expenses or for meal and incidental expenses incurred while traveling away from home will be deemed substantiated under section 1.274-5 of the Income Tax Regulations when a payor (the employer, its agent, or a third party) provides a per diem allowance under a reimbursement or other expense allowance arrangement to pay for the expenses.  In addition, this revenue procedure provides an optional method for employees and self-employed individuals who pay or incur meal costs to use in computing the deductible costs of business meal and incidental expenses paid or incurred while traveling away from home.  This revenue procedure also provides an optional method for use in computing the deductible costs of incidental expenses paid or incurred while traveling away from home by employees and self-employed individuals who do not pay or incur meal costs and who are not reimbursed for the incidental expenses.  Use of a method described in this revenue procedure is not mandatory, and a taxpayer may use actual allowable expenses if the taxpayer maintains adequate records or other sufficient evidence for proper substantiation.
* * *

Rev. Proc. 2001-47, sec. 1, 2001-2 C.B. at 332, is almost identical to the passage quoted above, but the following sentence is omitted:

> This revenue procedure also provides an optional method for use in computing the deductible costs of incidental expenses paid or incurred while traveling away from home by employees and self-employed individuals who do not pay or incur meal costs and who are not reimbursed for the incidental expenses.

Rev. Proc. 2002-63, sec. 4.05, 2002-2 C.B. at 694; Rev. Proc. 2003-80, sec. 4.05, 2003-2 C.B. at 1040; and Rev. Proc. 2004-60, sec. 4.05, 2004-2 C.B. at 685, expressly provide that taxpayers who do not pay or incur meal expenses when traveling away from home may use, in lieu of providing actual receipts to substantiate incidental expenses, an established per diem rate of $2 or $3, depending on which revenue procedure is applicable for the date of travel. Rev. Proc. 2001-47, sec. 4, 2001-2 C.B. at 333-334, which provides specific rules for the per diem substantiation method, does not contain a similar provision. However, we have held previously that the incidental portion of the per diem rates for meals and incidental expenses (M&IE) may be used as deemed substantiation of incidental expenses when meals are provided by a taxpayer's employer. Johnson v. Commissioner, 115 T.C. 210, 210-211 (2000). The applicable revenue procedures provide that the Federal M&IE rate will be applied, with stated exceptions, in the same manner as applied under the Federal Travel Regulations, 41 C.F.R. secs. 301-311, in

effect at the time each respective revenue procedure was released.

Maersk furnished petitioner with lodging and meals without charge while he was working on its vessels during the years in issue. Although petitioner did not pay for his meals while at sea or while docked in foreign ports, he argues that he is entitled to deduct the full M&IE per diem rate for those days for which he must include income earned in international waters. Petitioner asserts that the applicable revenue procedures permit him to deduct the full applicable M&IE rate for work-related travel even though all of his meals were provided to him free of charge by Maersk, but his only argument in support of this assertion rests on the absence of any explicit requirement in Internal Revenue Service publications that a taxpayer actually pay for his meals in order to qualify for the standard meal allowance deduction.

Petitioner argues further that this issue is novel to the Court. We disagree. In Johnson v. Commissioner, supra, the taxpayer, also a merchant seaman, deducted the full Federal M&IE rates on his return even though all of his meals were provided to him free of charge by his employer. We held that, because the taxpayer's actual expenses consisted solely of incidental expenses, his use of the M&IE rates to calculate his deductions for business expenses due to travel away from home was limited to

the incidental portion of those rates.  Id. at 210-211.  The taxpayer established that he had incurred incidental expenses during his travel away from home and was allowed to use the incidental portion of the M&IE rates to substantiate those expenses in lieu of providing actual receipts.

The purpose of the Federal per diem rates is to ease the burden of substantiating travel expenses away from home, not to eliminate the requirement that those expenses be incurred before they can be claimed as deductions from income.  Although petitioner contends that the Court has not yet addressed this issue, we explicitly stated in Johnson v. Commissioner, supra at 227:  "We do not read the revenue procedures to allow a taxpayer to use the full M&IE rates when he or she incurs only incidental expenses."  Petitioner is not entitled to deductions for meal expenses he did not pay or incur.  See Balla v. Commissioner, T.C. Memo. 2008-18.  He is, however, as respondent has conceded, entitled to a miscellaneous itemized deduction for incidental expenses as permitted in Johnson, and the applicable revenue procedures for the years in issue, but only with respect to those days when petitioner was working in international waters and for which he must include income earned.

Accuracy-Related Penalty

Section 6662 imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations or substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). Section 6662(d) defines "substantial understatement of income tax" as an amount exceeding the greater of 10 percent of the tax required to be shown on the return or $5,000. Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalty is inappropriate because of reasonable cause or substantial authority. Id. at 446-447; Rule 142(a).

The accuracy-related penalty under section 6662(a) will not be imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made by taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is

the extent of the taxpayer's effort to assess his proper tax liability. This factor includes in some circumstances the taxpayer's reasonable and good faith reliance on the advice of a tax professional. Id.

Respondent's burden of production has been met. Petitioner has conceded that he received, but failed to include in gross income, the following amounts of interest income and U.S. military retirement pay in the years in issue:

| Year | Interest Income | U.S. Military Retirement Pay |
|------|-----------------|------------------------------|
| 2002 | $20 | $14,904.00 |
| 2003 | 31 | 15,106.20 |
| 2004 | 50 | 15,417.00 |

Petitioner also concedes that he either failed to report that income on his returns for the years in issue or improperly excluded it as foreign earned income.

Because petitioner's income earned in international waters is includable in his gross income, petitioner also improperly excluded from gross income the following amounts, calculated by multiplying petitioner's total earned income for each year by the ratio of days worked in international waters to total days worked for that year:

| Year | Days Worked in International Waters | Amount Includable in Gross Income |
|------|-------------------------------------|-----------------------------------|
| 2002 | 88 (205 total days worked) | $20,921.60 |
| 2003 | 115 (204 total days worked) | 31,215.60 |
| 2004 | 90 (182 total days worked) | 26,023.54 |

Petitioner excluded all his income for the years in issue as foreign source income on his returns, claiming that he had no Federal tax liability and that he was entitled to refunds of all taxes withheld during those years. If, for any year in issue, the amount of gross income that petitioner failed to include as required results in an understatement of income tax exceeding $5,000, then petitioner is subject to the accuracy-related penalty for a "substantial understatement" for that year. Sec. 6662(a) and (b)(2). If, however, the resulting understatement of income tax does not exceed $5,000 for any of the years in issue, then petitioner is not liable for the penalty under section 6662(a) unless that understatement is the result of petitioner's negligence or disregard of rules and regulations. Sec. 6662(a) and (b)(1).

Petitioner argues that he was not negligent in preparing his returns for the years in issue. Petitioner testified at trial that he had reviewed several publications on the Internal Revenue Service's Web site to assist him in preparing his returns. Petitioner's testimony focused on his prior review of special rates that transportation workers may use to calculate business expense deductions, specifically meal expenses. However, petitioner did not claim any deductions for expenses on his returns for the years in issue. His testimony on this point relates to his position at trial and on brief that he is entitled

to standardized meal expense deductions for meal expenses he neither paid nor incurred, rather than the position he took on his returns, in which he claimed that he was liable for no Federal income tax.  Petitioner did not consult a tax professional before taking this position on his returns.

Petitioner also testified at trial that he read the instructions to Form 2555-EZ before he completed his returns for the years in issue.  Those instructions state, in relevant part, that foreign earned income does not include amounts paid by the U.S. Government.  Petitioner improperly and unreasonably excluded his U.S. military retirement pay from gross income for all years in issue.

Petitioner argues that he should not be liable for the accuracy-related penalties under section 6662 because, in spite of his failure "to account for some minimal interest and military retirement pay income" for the years in issue, his returns were timely and substantially accurate.  However, petitioner's returns were not substantially accurate.  Petitioner haphazardly prepared his returns for the years in issue, incorrectly characterizing all of his income as wages and failing to include $9,051 of retirement pay in 2004.  He then excluded all of that income as foreign earned income, disregarding the instructions that clearly stated his military retirement pay was ineligible for the exclusion.

Petitioner has failed to show that his positions on his returns for the years in issue were taken with reasonable cause and in good faith within the meaning of section 6664(c)(1). He has presented no evidence that he acted in reasonable reliance on the advice of a tax professional in asserting the positions taken on his returns. He claims that he read the instructions to Form 2555-EZ before claiming the foreign earned income exclusion of all of his income for the years in issue; however, those instructions make clear that U.S. military retirement pay is not foreign earned income. Petitioner failed to include his military retirement pay as gross income and instead characterized those amounts as wage income and excluded them.

Petitioner's general arguments that his income earned in international waters is foreign source income excludable under section 911 from gross income, while extensive, ignore the plain provisions of section 911 and the legislative regulations. Petitioner relies on the general sourcing rules of sections 861 through 865, but those sections do not provide a rule for sourcing income in petitioner's particular situation. Petitioner has not addressed the terms of the statute and the regulations under section 911 and, in excluding all of his income from gross income for Federal income tax purposes, has not shown that he took care to assess properly his tax liability or that he had reasonable cause in failing to do so. Thus, petitioner is liable

for the accuracy-related penalty under section 6662 for underpayments attributable to negligence or disregard of rules or regulations.

In reaching our decision, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.