**In re METRO TRANSPORTATION CO.,
t/a Yellow Cab Co., Debtor.**

**Bankruptcy No. 86–03618S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 25, 1988.

———

Kevin W. Walsh, Philadelphia, Pa., for debtors.

Mary F. Walrath, Edward C. Toole, Jr., Philadelphia, Pa., for Cr. Comm.

Jerome H. Ellis, Glenside, Pa., for movant.

James P. Golden, Philadelphia, Pa., for Yellow Cab Co.

### MEMORANDUM OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

On December 21, 1987, one JAMES CARRAGHER filed a Motion to Modify Stay (and is therefore referred to as "the Movant") seeking permission from this court to proceed with state court litigation against the Debtor arising out of a vehicular accident in which he was involved on June 19, 1981. The granting of this motion was necessary to allow the Movant to proceed because of the filing of the instant Chapter

11 bankruptcy case by the Debtor on July 29, 1986.

On January 11, 1988, the Debtor filed an Answer opposing this Motion and a hearing was scheduled before the court on January 20, 1988. At that time counsel for the Movant, counsel for the Debtor in this court, and counsel for "Yellow Cab Company" in the state court proceeding in issue appeared and presented argument.

No testimony was adduced. The Movant's counsel sought to enter into the record the exhibits attached to his motion, which were the following: (1) The state court Complaint naming PHILADELPHIA ELECTRIC COMPANY (hereinafter referred to as "PECO"), a vehicle owned by which and operated by an agent of which struck the Movant qua pedestrian; (2) A third-party Complaint of PECO against "YELLOW CAB COMPANY," whose vehicle allegedly veered in front of PECO's vehicle, causing the accident; and (3) The Answer of the Defendant "t/a YELLOW CAB COMPANY" to the third-party Complaint.

The Movant also sought to add to the record certain Orders which counsel indicated were entered in *In re Yellow Cab Company of Philadelphia*, a bankruptcy case filed under Chapter XI of the Bankruptcy Act at Bankruptcy No. 78–422, on April 1, 1978, and in which we note that, a final Distribution Order having been entered on July 22, 1987, an end has almost been reached. Apparently, the significance of these Orders, in the mind of the Movant's counsel, is that one of them confirmed the sale of all or a substantial part of the assets of the debtor in that case to the Debtor in this case, thus arguably rendering the Debtor liable in the place of its predecessor.

During the course of the hearing, the Movant's counsel, departing from the text of the motion, which recited no limitation on the relief sought, orally indicated a willingness to proceed against only the Debtor's insurer or insurers and requested permission to take discovery to ascertain the insurance coverage of the Debtor, or its predecessor, as of the date of the accident.

Because this request was belatedly made only in the course of the hearing and in light of our disposition which indicates that the issue of insurance coverage is not decisive in the Movant's favor, this request was denied.

The record therefore consists of the pleadings relative to this Motion, i.e., the Motion itself and the Answer; and the documents recited above which we admitted without objection upon the Debtor's counter-request that all of the Docket Entries in Bankruptcy No. 78–422 be admitted into the record. Other than the facts recited above, the pleadings add only that a verdict was entered in favor of the Movant against "Yellow Cab Company" only on May 30, 1985, but that the Movant filed post-trial motions requesting that the verdict be "molded and entered" against the Debtor. The Debtor, emphasizing that a verdict was rendered against Yellow Cab Company" only, apparently vigorously denies that the judgment should be attributed to it.

We sense that there is a hotly-contested legal dispute over whether the Movant's verdict is collectible from the Debtor or not. However, we need not decide this issue because, assuming *arguendo* that the Movant's verdict *is* collectible from the Debtor, or indeed even if it had been entered against the Debtor itself, we do not believe that the record warrants the relief sought by the Movant.

In a bankruptcy case, the lot of a pre-petition unsecured claimant is generally restricted to filing a claim in the bankruptcy case against the Debtor and seeking to collect upon that claim, according to Code-established priorities of the claimant vis-a-vis other creditors, from the assets of the Debtor available to pay such claims under a confirmed plan of reorganization. In this case, as might be imagined, there are thousands of parties who have pre-petition claims against the Debtor arising from vehicular accidents. The prospects of the Debtor's reorganization would clearly be jeopardized, if not decisively frustrated, if parties having such claims could continue to litigate against the Debtor in other courts. The time, energy, and financial

resources which the Debtor is concentrating in its reorganization process which would be siphoned off to defend such claims could clearly be substantial. Hence, it is not surprising to observe that tort claimants against a debtor, in this or any other bankruptcy case, have a difficult threshold to to cross if they wish to avoid the bankruptcy claims process and proceed against a debtor in litigation elsewhere.

Faced with similar motions by tort claimants in *In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005, 1009 (Bankr.E.D.Pa. 1987), *appeal dismissed,* C.A. No. 87–2364 (E.D.Pa. June 25, 1987); and *In re Stranahan Gear Co.,* 67 B.R. 834, 836–38 (Bankr. E.D.Pa.1986), we recited copious precedent for the principle that, irrespective of the wording of 11 U.S.C. § 362(g), the burden of producing evidence necessary to prevail in litigation pursuant to 11 U.S.C. § 362(d) is upon the movant. In *Perlstein,* we further noted that, while unsecured creditors generally had a difficult task in producing sufficient evidence to obtain relief from the automatic stay, 70 B.R. at 1009, they could do so by "establishing that the balance of hardships tips in their favor," *id.* at 1010, which we noted "imposes a significant burden upon unsecured creditors ... which they can rarely, if ever, sustain on the basis of pure allegations, ..." *Id.* We utilized the aforesaid general analysis for resolution of § 362(d) motions involving unsecured creditors in later decisions in *In re Ziets,* 79 B.R. 222, 224, 226 (Bankr.E.D. Pa.1987) (motion denied); and *In re Cherry,* 78 B.R. 65, 72–74 (Bankr.E.D.Pa.1987) (motion granted).

We note that, in the brief period since we filed a Memorandum of January 14, 1988, denying a similar motion in this case, three decisions have been rendered which reinforce the tenets of our above-cited decisions. First, in *In re Ward,* 837 F.2d 124 (3d Cir., 1988), the Court of Appeals declined to grant a § 362 motion based upon creditors' "bare-bones, paper allegations to satisfy their burden," at 128, observing that the moving party "bears the burden of proof on a motion for relief from the stay." *Id.* at 128. In the others, Judge Fox of this court, in *In re Clinton Centrifuge, Inc.,* 81

B.R. 844, 849–51 (Bankr.E.D.Pa.1988); and *In re Borbridge,* 81 B.R. 332, 335–37 (Bankr.E.D.Pa.1988), utilized a balancing test similar to that employed by us in our above-cited cases in denying § 362(d) motions. In *Borbridge,* moreover, the movant was denied permission to proceed in state court, even though the movant in that matter presented evidence tending to show that the debt in issue may have been non-dischargeable and that a related case against a non-debtor would have to be maintained in state court, thus raising the spectre that judicial economy would be furthered if the motion were granted. In *Clinton,* a state court suit was already pending against non-debtor individuals, thus heightening the force of the judicial economy argument.

The Movant here presented no testimonial evidence whatsoever and did not allege any elements of potential non-dischargeability of its claim or a preservation of judicial resources resulting from granting the motion for relief, as was supported by testimonial evidence in *Clinton* and *Borbridge.* Rather, the Movant here seemed to consider it sufficient for him to carry the day on his motion to argue vigorously that the Debtor was responsible for the liability and that insurance coverage for the liability existed.

Clearly, establishing potential liability of the Debtor was insufficient to justify relief. There was little question of the respective debtors' liability to the respective movants in *Stranahan Gear, Perlstein,* or *Ziets,* and yet relief was denied.

Proving (rather than as here, merely vaguely alleging) insurance coverage and expressly agreeing to limit litigation or assertion of claims against insurers (rather than, as here, not indicating any such limitation in the motion or proposed order and merely verbally expressing such a limitation as a fall-back position) *could* possibly support a conclusion that the balance of hardships tips in favor of a tort claimant. *See In re Holtkamp,* 669 F.2d 505, 508–09 (7th Cir.1982) (stay relief granted where insurer was obliged to finance defense in its entirety); and *In re Bock Laundry*

*Machine Co.,* 37 B.R. 564, 567–68 (Bankr. N.D.Ohio 1984) (court issues limited relief on finding delay to movants outweighs harm to debtor); and *In re McGraw,* 18 B.R. 140, 141–42 (Bankr.W.D.Wis.1982) (court granted relief to pursue action because the principal target was not the debtor, but his vicariously liable employer and its insurer).

However, even where tort claimant-movants *have* expressly limited their stay-relief requests to pursuit of debtors' insurers and their resources, tort claimants have not been uniformly successful. We denied a motion very carefully drawn by expert bankruptcy counsel proposing to limit resort to insurers in this very case in our Memorandum of January 14, 1988, especially in light of the fact that the movants' counsel refused to waive his clients' claims against the debtor. No such waiver was proposed by the Movant here, either. There, we pointed out that even making claims against a debtor's insurers impacts upon property of the estate and that a debtor must expend its resources to some degree to defend even claims which are ultimately totally covered for payment by insurance. We cited numerous appellate decisions where the courts had so reasoned, and denied motions for relief from the stay in which the moving parties very clearly argued to pursue insurers exclusively. *See, e.g., In re A.H. Robins Corp., Oberg v. Aetna Casualty & Surety Co.,* 828 F.2d 1023, 17 C.B.C.2d 526, 529 (4th Cir.1987); *Tringali v. Hathaway Machinery Co.,* 796 F.2d 553, 560–61 (1st Cir.1986); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1007–09 (4th Cir.1986); and *In re Johns Manville Corp.,* 40 B.R. 219, 229–31 (S.D.N.Y.1984). Thus, we concluded there that, where the record is silent, we could not draw the inference that the Debtor would suffer little or no negative consequences if the motion for relief from the automatic stay were granted because the Debtor had insurance coverage.

Here, similarly, there is an absence of production of evidence by the Movant tending to establish that the balance of hardships tips in his favor. Thus, we will enter a similar Order denying the instant Motion.

We believe that, like all other unsecured claimants in this case, the Movant must be confined to the claims process to collect his claim, although we further note that, in light of the apparent dispute as to whether the Movant is even a claimant of this debtor, the Movant may be obliged to litigate the legitimacy of any Proof of Claim filed by him in this case. The doubtfulness of his status as a claimant, of course, further weakens the Movant's position. Nevertheless, even assuming *arguendo* the strength of his claim, we are obliged to enter the enclosed Order denying the instant Motion.