### In re Charles A. WEATHERLEY, Debtor.

### Bankruptcy No. 94–12562DAS.

United States Bankruptcy Court, E.D.  Pennsylvania.

July 22, 1994.

Charles A. Weatherley, pro se debtor.

Lisa Primavera Femia, Philadelphia, PA, for I.R.S.

Andrew Schwartz, Philadelphia, PA, Interim Trustee.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Before this court for resolution is a Motion ("the Motion") of the Internal Revenue Service ("the IRS") for relief from the automatic stay in order to allow it to levy on the wages of CHARLES A. WEATHERLEY ("the Debtor") on account of the Debtor's alleged outstanding indebtedness to the IRS of over $560,000 for income taxes for the tax years from 1976 through 1983, plus interest and penalties. In his response to the Motion, the Debtor, obviously a tax protester of long standing, challenges the authority of the IRS to collect any taxes from him on a number of grounds. We reject each and every one of the Debtor's articulated challenges to the IRS's authority to collect these taxes from him. However, since the IRS has presented insufficient evidence of its right to make the levy, and the balance of hardships does not clearly support the Motion in the context of this Chapter 7 case due to be closed within a month, the Motion is denied.

### B. FACTUAL AND PROCEDURAL HISTORY

This matter arises in the course of the Debtor's voluntary individual Chapter 7 bankruptcy case, filed *pro se* on April 28,

1994. In addition to the indebtedness to the IRS, listed on his Schedules at $568,673.15,[1] the Debtor references only two other debts on the Schedules: a bank loan secured by a 1988 Toyota automobile in the amount of $930.00 and an unsecured debt of $1,809.93 owed to an entity identified as National Credit Group.

We note that, in connection with a predecessor case, Bankr. No. 92–16628DAS, this court issued an injunction precluding an organization named Save-a-Patriot ("SAP") from receiving compensation from any parties for providing assistance in filing bankruptcies anywhere in the United States of America until it complied with our prior Orders requiring it to refund a reported $135 "membership fee" charged to the Debtor for assisting him in filing his prior case and requiring it to provide information about other cases in which it assisted debtors in bankruptcy filings. Our Order was affirmed upon SAP's appeal, in a decision reported at 1993 WL 268546 (E.D.Pa. July 15, 1993). The predecessor case, filed under Chapter 13 of the Bankruptcy Code, was ultimately dismissed. It appears that SAP is a tax-protestor support organization.

On May 31, 1994, the IRS filed the Motion before us. An Order requiring any party opposing the Motion to file a written Answer within 15 days of service, which accompanied the Motion as required by Local Bankruptcy Rule ("L.B.R.") 9014.1(b)(2), was, per the IRS, served on the Debtor on June 8, 1994. Although the Debtor failed to file a written Answer to the Motion, he did file a separate motion seeking to hold the IRS in contempt for allegedly continuing its levy upon his wages post-petition in violation of the automatic stay ("the Contempt Motion") on June 22, 1994. The instant Motion was listed for a hearing on June 28, 1994, and the Contempt Motion was listed for a hearing on July 21, 1994. The latter hearing was continued to August 18, 1994, due to improper service.

In light of his filing of the Contempt Motion, the IRS could hardly have been surprised when the Debtor, despite his not filing a written Answer to the Motion, appeared to

1. *But see* page 558 & n. 2 *infra.*

defend against the Motion at the June 28, 1994, hearing.

At that hearing, the IRS presented but one of its own witnesses, revenue officer/advisor Michael Stumpo. The substance of Stumpo's testimony was the identification and explanation of a computer print-out, ultimately admitted into evidence, which summarized the IRS's tax assessments against the Debtor. The substance of the document provided as follows:

| TAX YEAR | BALANCE DUE |
|----------|-------------|
| 1976 | $ 55,304.83 |
| 1977 | 95,168.01 |
| 1978 | 237,674.81 |
| 1979 | 44,533.97 |
| 1980 | 51,995.47 |
| 1981 | 49,322.03 |
| 1982 | 27,429.95 |
| 1983 | 6,518.72 |
| TOTAL | $567,947.79[2] |

Stumpo was unable to answer the court's seemingly most basic questions, e.g., How could the Debtor owe taxes of over $230,000 in 1978, and what was his original tax liability for that year? Why is the tax for 1978 so high relative to even the other tax years? Why were there no assessments of the Debtor's taxes after tax year 1983? Has the Debtor ever been convicted criminally for his refusal to file returns or pay taxes for almost twenty (20) years? It is therefore clear that Stumpo's testimony adds little or nothing of substance to the record in addition to the IRS's print-out of assessments.

After some ultimately fruitless discussion about a stipulation of certain additional facts, the IRS also called the Debtor as a witness. The Debtor readily admitted filing no tax returns since 1976, although he was a resident of Pennsylvania who had earnings during this period. The Debtor, now 76 years of age, testified that, for the past ten (or so) years, he had worked part-time delivering medicines to hospitals and clinics. Before that, he had his own business, which apparently ultimately failed.

The Debtor attempted, with a large measure of affability and deferential grace (which

were appreciated and are traits often lacking in tax protesters), to inject his legal arguments, which are addressed at pages 558–61 *infra*, into his cross-examination and testimony. Ultimately, this court offered to accept several pages of the Debtor's longhand writings as an Answer/Brief on his behalf. The IRS was allowed until July 8, 1994, to review and then respond to these submissions. On July 6, 1994, approximately simultaneously with the filing of the IRS's responsive Brief, the Debtor submitted additional handwritten pages, supplemented by several documents, including copies of sections of the Internal Revenue Code ("the IRC"), BLACK'S LAW DICTIONARY, and a list of "Court Case Laws That Uphold Our Views (on income)."

We will consider the documents and other submissions by the Debtor in the nature of briefs and legal arguments. We cannot, however, receive their contents as factual evidence, despite the Debtor's *pro se* status. *See In re Cook,* 146 B.R. 934, 939 (Bankr. E.D.Pa.1992), and cases cited therein.

## C. DISCUSSION

In his arguments in opposition to the Motion, the Debtor challenges the authority of the IRS to tax any of his income on a number of grounds. These defenses, supported by slanted and extremely unlikely readings of the applicable statute and Regulations, are classical tax-protestor arguments. All of the Debtor's articulated challenges to the IRS's authority to tax him have been uniformly rejected by courts in this and other circuits, and we find none of them to have any degree of merit or intuitive logical support.

### 1. The Debtor's Alleged "Non–Resident Alien Status"

■ The Debtor contends that he qualifies as a "non-resident alien" pursuant to 26 U.S.C. § 7701(b), and therefore he is not subject to federal income taxation. The argument proceeds in two parts. First, the Debtor claims that the federal government's

---

**2.** In the Motion, the IRS indicates that its claim is in the amount of $569,603.15. The Debtor, as noted above, lists the IRS's claim as $568,673.15.

The discrepancies in these figures are not explained in the record.

authority to impose its income tax is statutorily limited to residents of the District of Columbia, and the territories of American Samoa, Puerto Rico, the Virgin Islands, and Guam. In support of his contention, the Debtor relies upon 26 U.S.C. § 3121(e)(1), which provides that "[t]he term 'state' includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Island, Guam, and American Samoa," and 26 U.S.C. § 3121(e)(2), which provides that "[t]he term 'United States' when used in a geographical sense includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa." The Debtor obviously construes the word "includes" as a term of limitation, thereby circumscribing the authority of the federal government to tax residents of only the principalities mentioned therein. As a result, according to the Debtor, the federal government has no authority to tax residents of the states, which are "sovereign entities." Second, as a resident of a "sovereign state," the Debtor is claiming non-resident alien status within the "United States."

This argument, or variants thereof, has been raised by many tax protestors in several jurisdictions, and, not surprisingly, it has been uniformly rejected by the courts. For example, in a recent bankruptcy case, *In re Walters*, 166 B.R. 119 (Bankr.N.D.Ind.1993), the court held that, pursuant to 26 U.S.C. § 7701(a)(10), the taxing authority of the IRS "includes the several states and the District of Columbia as part of the United States of America." *Id.* at 120. Furthermore, the *Walters* court notes that even aliens who reside in the states are subject to taxation. *Id.*, citing *Cook v. Tait*, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895 (1924).

In *United States v. Ward*, 833 F.2d 1538, 1539 (11th Cir.1987), *cert. denied*, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1989), a tax protestor, under similar circumstances, attempted to invoke the non-resident alien exemption from income taxation. The *Ward* court held that the phrases of § 3121(e) beginning with "includes" are phrases of definition and not of limitation, and that this wording was utilized to secure federal tax jurisdiction over the territories, *as well as* the existing fifty states. In *In re Becraft*, 885 F.2d 547, 549 (9th Cir.1989), the court rejected a similar tax protestor argument and went on to impose sanctions against the attorney-taxpayer for raising such a "patently frivolous claim."

As we find that the IRC confers to the IRS jurisdiction over residents of the fifty (50) states, we conclude that the Debtor's claim of non-resident alien status is meritless. In *O'Driscoll v. IRS*, 1991 WL 133417 (E.D.Pa. July 16, 1991), the court held that, for tax purposes, citizenship is controlled by the fourteenth amendment, which states that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside." The *O'Driscoll* citizenship formula lays the Debtor's non-resident argument to rest. The fourteenth amendment established simultaneous state and federal citizenship, thereby securing the political jurisdiction of the federal government over the residents of the individual states. *Id.*, citing *Ainsworth v. United States*, 1989 WL 163861 (D.S.C. Nov. 30, 1989). Therefore, despite the Debtor's attempt to irrationally bend the plain meaning of the jurisdictional scope of the IRC to his advantage, we find that he is plainly a citizen of both Pennsylvania and the United States and, as such, subject to the federal income tax. Furthermore, as the court concluded in *Walters*, the debtor meets the definition of a "taxpayer" for our purposes.

### 2. The Debtor's Claim That Wages Are Not Income

■ The Debtor next argues the unlikely principle that wages received from labor do not constitute taxable income. Thus, in one of the Debtor's hand-written submissions, he states: "Wages are *not* income, but they are an *equal* exchange of our effort, time and labor for money or other property."

The Supreme Court rejected this narrow definition of "income" in favor of a broad reading of the term in interpreting the 1939 IRC in *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). The Third Circuit Court of Appeals, see *Rickel v. Commissioner*, 900 F.2d 655,

657 (3d Cir.1990); and *United States v. Connor*, 898 F.2d 942, 943 (3d Cir.), *cert. denied*, 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 793 (1990), as well as numerous other Courts of Appeals that have confronted this issue, have uniformly upheld a broad definition of income which encompasses wages. *See Commissioner v. Miller*, 914 F.2d 586, 590 (4th Cir.1990) ("Exclusions to income are to be construed narrowly."); *Herbert v. United States*, 850 F.2d 32, 34 (2d Cir.1988) ("The Supreme Court has consistently given this definition of gross income a liberal construction in recognition of the intention of Congress to tax all gains except those specifically exempted."); and *Stelly v. Commissioner*, 761 F.2d 1113, 1115 (5th Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985) ("It is clear beyond peradventure that the income tax on wages is constitutional."). *Accord, Burke v. United States*, 929 F.2d 1119, 1121 (6th Cir.1990); *Vukasovich, Inc. v. Commissioner*, 790 F.2d 1409, 1413 (9th Cir. 1986); and *Gilbertz v. United States*, 808 F.2d 1374, 1378 (10th Cir.1987). *See also In re Carmel*, 134 B.R. 890, 896 (Bankr.N.D.Ill. 1991) ("This broad definition [of income] operates to tax all gains except those specifically excluded by statute."); and *In re Osborne*, 159 B.R. 570 (Bankr.C.D.Cal.1993), *aff'd*, 167 B.R. 698 (9th Cir. BAP 1994). *Cf. In re Robnett*, 165 B.R. 272, 274 (9th Cir. BAP 1994) (court imposes $1,500 sanction on tax protestor proffering the "patently frivolous" argument that only the extremely wealthy are subject to the federal income tax). We also note that, in the present IRC, the definition of income is very broad, *e.g.*,

> [except] as otherwise provided ..., gross income means all income from whatever source derived, including (but not limited to) the following items:
>
> > (1) Compensation for services, including fees, commissions, fringe benefits, and similar items;
> >
> > (2) Gross income derived from business;
> >
> > ...
>
> 26 U.S.C. § 61(a).

Therefore, we readily conclude that, despite his assertions to the contrary, the Debtor's earnings, most recently as a part-time driver for a medical supply company, constitute taxable income.

### 3. *The Debtor's Contention That the IRS May Tax Only Federal Employees*

■ The Debtor further makes the similarly counter-intuitive argument that the IRS has only the limited authority to tax employees of the federal government, and that, therefore, the IRS has no power to tax individuals who are employees in the private sector, such as himself. In *Blum v. IRS*, 1991 WL 53068 (W.D.Mo. March 8, 1991), the court dismissed this argument, holding that the term "employee" is not limited to governmental workers. In *Peth v. Breitzmann*, 611 F.Supp. 50 (E.D.Wis.1985), a tax protestor similarly attempted to argue that the term "employees" was limited to governmental officers. The court found that the plaintiff's construction "mistakenly assumes" that the definition of the term "employee" in 26 U.S.C. § 3401(c) "excludes all other wage earners." *Id.* at 53. The court further held that this argument is also inconsistent with 26 U.S.C. § 6331(d)(1), which allows for the levy of wages of "any person," in the event of unpaid taxes. *Id.*

We therefore easily conclude that the Debtor, although not a federal employee, was an "employee" subject to taxation and to levy of his wages when he did not pay his federal income taxes.

### 4. *The Alleged Impropriety of the IRS's Preparation of Substitute Returns on the Debtor's Behalf*

■ Finally, and at some length, the Debtor claims that he owes the IRS nothing because any tax assessments must be calculated with tax returns filed by the taxpayer, and that he cannot be taxed because he has not filed any returns. This argument is supported by written exhortations, which were apparently initially submitted by the Debtor to his employer, that payment of taxes, withholdings from his wages by his employer for same, and the preparation of tax returns are not mandatory at law, but are optional to every citizen. The Debtor obviously is not willing to exercise this option in favor of the IRS.

The Debtor offers no statutory authority for these wishful claims that federal tax liability is optional. It is apparent to us that 26 U.S.C. § 6012(a), establishing the general rule that returns of income *shall* be made by all persons except all individuals falling within certain exceptions, none of which exceptions the Debtor claims are applicable, makes the filing of returns mandatory for him.

The Debtor, apparently in support of his argument that filing tax returns is merely permissive, highlights the portion of the definition of "shall" in BLACK'S LAW DICTIONARY 1233 (5th ed. 1979), stating that the term "shall" "may be construed as merely permissive or directory (as equivalent to 'may'),...." However, he overlooks the earlier statements in the same text that "[a]s used in statutes, this word is generally imperative or mandatory." *Id.* It is clear to us that "shall" is meant to be taken in its general sense as mandatory in this context.

The Debtor readily admits that, between the years 1976 and 1983, and each year thereafter, he did not file tax returns. By the authority of 26 U.S.C. § 6020(b), the IRS therefore was warranted in filing substitute returns on behalf of the Debtor for these tax years. In response to the arguments similar to those made here by the Debtor, the court states, in *Walters, supra,* 166 B.R. at 120, that, "where the Debtor fails to file the returns, § 6020(b) of the Internal Revenue Code allows the USA to prepare and execute the returns." *See also In re Bergstrom,* 949 F.2d 341, 343 (10th Cir.1991); *In re Lowrie,* 162 B.R. 864, 865 (Bankr.D.Nev.1994); and *In re Gushue,* 126 B.R. 202, 204 (Bankr. E.D.Pa.1991).

We therefore conclude that the IRS did not act improperly in filing returns for the Debtor in those tax years when he refused to do so, nor in assessing his federal income tax on the basis of the substituted returns which it prepared. It is not logical to torture the construction of the IRC to conclude that payment of federal income taxes is purely

voluntary and that a potential taxpayer can stymie the IRS's collection of taxes by simply "saying no" to filing a tax return.

5. *Nevertheless, the IRS Has Not Met Its Burden of Proving Its Right to Relief From the Automatic Stay To Levy on the Debtor's Wages at This Time*

Although all of the Debtor's protests fail to undermine the IRS' authority to collect income taxes from him, this court is not, by reason of that conclusion, compelled to grant relief from the automatic stay arising from the Debtor's bankruptcy case to the IRS at this juncture. We accept the IRS's contention that the Debtor's indebtedness to it is very likely to be nondischargeable pursuant to 11 U.S.C. § 523(a)(1). The record, such as it is, appears sufficient to support the conclusion that the Debtor's tax liability to the IRS for federal income taxes for tax years 1976 to 1983, and later years as well, is nondischargeable in bankruptcy because the Debtor admittedly refused and failed to file income tax returns for those tax years. *See* 11 U.S.C. § 523(a)(1)(B)(i); *Bergstrom, supra,* 949 F.2d at 342; and *Gushue, supra,* 126 B.R. at 203.

█ Nevertheless, simply because the Debtor's indebtedness to the IRS is nondischargeable does not automatically compel relief from the stay in the IRS's favor. As Collier notes, "[t]he automatic stay prohibits the IRS and other creditors from taking actions which are detrimental to the bankruptcy estate...." 1A COLLIER ON BANKRUPTCY, ¶ 12.06[1], at 12–41 to 12–43 (15th ed. 1993). Clearly, 11 U.S.C. § 362(a) precludes any post-petition actions by the IRS to collect even nondischargeable pre-petition debts. *See In re Schwartz,* 954 F.2d 569, 571–73 (9th Cir.1992); *United States v. Norton,* 717 F.2d 767, 771 (3d Cir. 1983); *In re Fernandez,* 132 B.R. 775, 778–79 (M.D.Fla.1991); *In re Bulson,* 117 B.R. 537, 539 (9th Cir. BAP 1990); and *In re Byrne,* 5 B.R. 556, 557–58 (Bankr.W.D.Pa.1980).[3]

---

3. The Debtor, in the Contempt Motion referenced at pages 557–58 *supra,* contends that the IRS already has violated the automatic stay by levying his wages after the filing of his bankruptcy case. In subsequent documents, he has contended that these violations have continued. It would appear that, despite the general immunity of the IRS for monetary liability under the Bankruptcy Code, *see United States v. Nordic Village, Inc.,* —— U.S. ——, ——–——, 112 S.Ct. 1011,

■ Of course, the IRS may be entitled to relief from the automatic stay to proceed to levy against a taxpayer-debtor's property where it presents evidence that it meets the requirements of 11 U.S.C. §§ 362(d)(1) or 362(d)(2). *See In re Metro Transportation Co.*, 82 B.R. 351, 353 (Bankr.E.D.Pa.1988); and *In re Stranahan Gear Co.*, 67 B.R. 834, 836–38 (Bankr.E.D.Pa.1986).

In order to succeed under § 362(d)(2), the IRS must establish that its claim is secured, such that the Debtor lacked equity in its collateral. *See* 11 U.S.C. § 362(d)(2)(A). In order to succeed under § 362(d)(1), the IRS must establish "cause," such as lack of adequate protection of a security interest or of any other "special interest" which it establishes that it has in the Debtor's property.

Although the Debtor expended much of his energies in contesting the authority of the IRS to tax him, he also raised the issue of whether the IRS followed the proper procedures in levying upon his wages to collect his tax liabilities, assuming *arguendo* that he owed the tax claims in issue. Granted, the Debtor's main thrust was a broadside attack on the mandatory nature of a "Notice of Levy," asserting that it is just a notice which may be disregarded by him and his employer with impunity. We do not join this misguided argument of the Debtor that a "Notice of Levy" is *per se* ineffectual.

However, as the court points out in *Blum v. IRS, supra,* at *2,

[n]ormally the IRS may not "assess" a tax or collect it, by levying on or otherwise seizing a taxpayer's assets, until the taxpayer has had an opportunity to litigate his tax liability fully in the Tax Court, ... A prerequisite to the propriety of Tax Court jurisdiction is that a notice of deficiency must be sent to the taxpayer by certified or registered mail. The taxpayer then has 90 days in which to petition the Tax Court for a redetermination of the deficiency....

1014–16, 117 L.Ed.2d 181 (1992), this court may be empowered to enjoin violations of the automatic stay, *see In re Shafer,* 146 B.R. 477, 479–81, *modified,* 148 B.R. 617 (D.Kan.1992), and to impose monetary sanctions under 11 U.S.C. § 362(h) against the IRS pursuant to the Con-

■ The IRS presented virtually no evidence that it had followed any of the procedures which are prerequisites to effecting a levy against the Debtor's wages. Stumpo merely identified a record of the assessment of certain tax liabilities against the Debtor. The Debtor, although quick to display the "Notice of Levy" provided to him, was equally quick to discount its validity and significance. The IRS, in response, presented no evidence that it had followed the necessary steps to allow it to be entitled to levy on the Debtor's property, *i.e.*, giving him an opportunity to litigate his liability or mailing him a notice of deficiency. As in the case of a secured creditor seeking relief from the automatic stay to foreclose on its collateral, *see In re Grant Broadcasting of Philadelphia, Inc.,* 75 B.R. 819, 822–23 (E.D.Pa.1987); *In re Hunt's Pier Associates,* 143 B.R. 36, 50 (Bankr.E.D.Pa.1992); and *In re Shapiro,* 109 B.R. 127, 132 (Bankr.E.D.Pa.1990), the IRS was obliged to prove the validity of its security interest or other special interest (such as a right to effect a levy) giving it a right to proceed if it relied upon § 362(d)(2), or if it claimed a security interest or other special interest in the Debtor's property in invoking § 362(d)(1).

■ Failing to establish its security or other special interest in the Debtor's property against which it wished to proceed, the IRS was obliged to establish, in the role of an unsecured creditor, that the balance of hardships tipped in its favor to entitle it to relief under § 362(d)(1). *See Hunt's Pier, supra,* 143 B.R. at 50; and *Metro Transportation, supra,* 82 B.R. at 353. This it failed to do. The Debtor is well up in years and is restricted in his employment to semi-retirement. The Debtor provided uncontroverted and seemingly accurate testimony at the hearing that he has not been working at all lately due to a recent medical condition. He obviously anticipates retiring completely in the near future.

tempt Motion particularly if the IRS has filed a proof of claim in this case. *See In re Pinkstaff,* 974 F.2d 113, 115 (9th Cir.1992); *In re Tyson,* 145 B.R. 91, 95–96 (Bankr.M.D.Fla.1992); and *In re Colon,* 114 B.R. 890, 896–98 (Bankr. E.D.Pa.1990).

It appears that the Debtor's wages are nominal at this time, and are necessary for his support. In light of the fact that the stay appears likely to remain in place for only a limited duration, and the obligation appears to be nondischargeable and collectible into perpetuity after this Chapter 7 case ends, it appears that the pendency of this bankruptcy case will not greatly impede the IRS in ultimately collecting its claim. We observe that the Debtor's tax liabilities in issue are all over ten (10) years old, and the IRS has provided no explanation for its lengthy delay in pursuing collection of same. A month's additional delay is hardly likely to cause great prejudice to the IRS's interests. In sum, the IRS has presented no evidence which supports its *immediate* need to begin to levy upon the Debtor's wages.

*D. CONCLUSION*

For the foregoing reasons, this court will enter an Order denying the IRS's Motion for Relief from the automatic stay. However, in so doing, we underscore that we strenuously reject all of the Debtor's claims which attempt to undermine the authority of the IRS to tax his wages earned in the tax years in issue.

*ORDER*

AND NOW, this 22nd day of July, 1994, after a hearing of June 28, 1994, on the Motion of the Internal Revenue Service for relief from the automatic stay ("the Motion"), upon consideration of the various submissions by the interested parties, it is hereby

ORDERED AND DECREED that the Motion is DENIED.