Larry READINGER, Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (EPLER
MASONRY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 4, 2004.

Decided Aug. 6, 2004.

Patrick M. Donan, Philadelphia, for petitioner.

Joseph R. Baranko, Jr., Hazleton, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

Larry Readinger (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) reversing the grant of unreasonable contest attorney's fees and costs against Epler Masonry (Employer). Because we agree with the Board's reading of the Workers' Compensation Act (Act),[1] we affirm.

Claimant suffered a work-related low back injury during the course of his employment with Employer. Workers' Compensation Judge (WCJ) Finding of Fact (F.F.) No. 2. Employer issued a Notice of Compensation Payable, and Claimant began receiving benefits. *Id.*

Approximately a year later, Employer filed a Petition to Modify Compensation Benefits (Modification Petition) on the basis that work generally was available to Claimant. Certified Record (C.R.) Page 1. The WCJ held hearings. Among other witnesses, each side presented the testimony of a rehabilitation counselor.

The WCJ denied Employer's Modification Petition. WCJ Conclusion of Law (C.L.) No. 2. The WCJ awarded Claimant costs and attorney's fees under Section 440 of the Act[2] because he found Employer's contest was not reasonable. C.L. Nos. 3–5. Central to this conclusion was the determination that Employer's earning power market survey did not include any positions from agencies of the Department of Labor and Industry (Department) or private job placement agencies. F.F. No. 12.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4, 2501—2626.

2. Added February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 996. Under that section, attorneys' fees are excluded from costs awarded to a claimant where, "a reasonable basis for the contest has been established by the employer...."

Employer appealed to the Board, assigning error to the conclusion that its contest was not reasonable. Bd. Opinion at 2. More specifically, Employer asserted it was not required to include job listings from the Department or private job placement agencies in its market survey. *Id.*

The Board agreed with Employer. The Board concluded Employer's contest was reasonable, and that Employer's market survey was sufficient under the Act. Accordingly, the Board reversed the WCJ's decision to award attorney's fees to Claimant. Claimant appealed to this Court.[3]

■ We must decide whether the statute requires an expert witness to include all identified types of job listings in an earning power market survey: 1) agencies of the Department; 2) private job placement agencies; and 3) advertisements. The Board concluded Employer's expert may present job listings from any of those sources, but need not present listings from all. Claimant disagrees, arguing the statute requires an earning power market survey include job listings from all three sources.

The statutory language at issue, 77 P.S. § 512(2), states (with emphasis added),

"Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence *which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area.*

The Board found this language did not require jobs from all three sources be included in Employer's market survey. The Board noted,

The purpose of the Section is to establish a procedure for determining a claimant's earning power; earning power will be determined based on expert evidence of vocationally suitable, available jobs in the claimant's geographic area. Any one of the three sources for job listings, if adequately developed, could provide sufficient evidence of suitable, available jobs in the claimant's geographic area to determine a claimant's earning power.

Bd. Opinion at 4. The Board further stated it would be impractical to require job listings from all three sources, because circumstances such as geographic location, the economy, the type of position being sought, or other factors might cause listings from one or more sources to be nonexistent. Bd. Opinion at 4–5. Finally, the Board noted requiring job listings from all three sources would cause undue hardship in creating the market survey. Bd. Opinion at 5. The Board stated the inclusiveness of the three sources in the market survey would go toward the weight given the survey rather than its legal sufficiency. *Id.*

■ We conclude the Board did not err. It is our duty to ascertain the legislature's intent in construing a statute. *In re Appeal of Martin,* 33 Pa.Cmwlth. 303, 381 A.2d 1321 (1978). However, we may not disregard clear or unambiguous words in a statute under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

The statutory language at issue here is not ambiguous. The statute states earning power is based on expert opinion evidence which includes the three listed

---

**3.** This Court's review is limited to a determination of whether necessary findings of fact are supported by substantial evidence, whether the Board's procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Bey v. Workers' Comp. Appeal Bd. (Ford Elecs.),* 801 A.2d 661 (Pa. Cmwlth.2002).

sources. The three listed sources are examples of the sources to be used by the expert. We base our conclusion on guidance from our Supreme Court, which holds the word "includes" is a word of enlargement, not limitation. *Pennsylvania Human Relations Comm'n v. Alto–Reste Park Cemetery Ass'n*, 453 Pa. 124, 306 A.2d 881 (1973). Also, our conclusion is consistent with persuasive treatise authority, specifically, Black's Law Dictionary 766 (7th ed.1999), which notes "including" typically indicates a partial list. Further, our plain language reading is supported by persuasive case law from other jurisdictions.[4]

■ Thus, by using the term "includes" followed by three items, the legislature offered examples of sources from which experts could obtain job listings, not a restrictive and mandatory list. The expert is free to use any of those three sources, or other sources, in its market survey.

Moreover, the result is the same even if the statute is considered ambiguous. In interpreting a statute, we are permitted to consider the purpose behind the statute and the former law. 1 Pa.C.S. § 1921(c)(4) and (5). Moreover, we are to presume the legislature did not "intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1).

At one time confusion existed as to whether employers seeking to modify benefits on the basis of available work were required merely to show jobs were *potentially* available to a claimant (i.e., such jobs existed, but were not necessarily open to the claimant) or to show jobs were *actually* available to the claimant (i.e., vacant).

*See generally Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). In *Kachinski*, our Supreme Court instructed that the appropriate inquiry is whether the employer shows jobs that are actually available and open. *Id.* at 250–51, 532 A.2d at 379.

Thereafter, the legislature added 77 P.S. § 512(2) by what is commonly known as Act 57.[5] This Court considered the impact of Act 57 on the employer's burden in *South Hills Health Sys. v. Workers' Comp. Appeal Bd. (Kiefer)*, 806 A.2d 962 (Pa. Cmwlth.2002). There, we determined the purpose of Act 57 was to codify the requirement that employers demonstrate jobs that are actually open and available to claimants. *Id.; see also Motor Coils MFG/WABTEC v. Workers' Comp. Appeal Bd. (Bish)*, 853 A.2d 1082 (Pa.Cmwlth. 2004). In *South Hills*, we noted,

By its listing of sources of positions ... it is evident that the General Assembly intended the concept of the term "existing" to mean positions that are available, because it is not likely that those sources would list positions that are not open and available. If the General Assembly had intended the term "existing" to mean job classifications and positions which "exist" in the workplace in the abstract, but are filled by other people in the workforce, it could easily have so stated.... [T]he predecessor Act's former notion of availability is still alive, and ... an employer may challenge a claimant's benefits *if it can establish that a claimant has failed to take advantage of "available" employment opportunities* .... Where an employer

**4.** *See, e.g., In re Beaver Valley Builder's Supply, Inc.,* 177 B.R. 507 (W.D.Pa.1995) ("includes" is not limiting in scope and suggests an expansive, not restrictive, interpretation); *In re Weatherley,* 169 B.R. 555 (E.D.Pa.1994) (phrases using "includes" are phrases of definition not limitation); *In re Lacrosse,* 244 B.R. 583 (M.D.Pa.1999) (term "including" is not exhaustive).

**5.** Act of June 25, 1996, P.L. 350.

does not offer a specific job to a claimant, and seeks modification based on earning power by the use of a certified vocational expert, that expert must base a determination of earning power on positions that are actually available.

*South Hills,* 806 A.2d at 969–70 (emphasis added).

The analysis in *South Hills* makes clear the legislative intent behind Act 57 was to require experts' market surveys include jobs that are actually open and available to claimants. The fact-finder must then be persuaded that the positions are actually available. *Allied Prod. and Serv. v. Workers' Comp. Appeal Bd. (Click),* 823 A.2d 284 (Pa.Cmwlth.2003). It is clear the legislature included the list of three sources because those sources would yield jobs that meet the requirement of being actually available and open. *South Hills,* 806 A.2d at 969–70.

■■■■ However, we are not persuaded that an expert must use all three sources in his or her market survey. In construing statutory language, courts "are often compelled to construe 'and' as meaning 'or'. . . ." *Martin,* 381 A.2d at 1322. As our Supreme Court noted in interpreting a different statute, "We are convinced that 'and' must be interpreted as to include 'or,' for it is only in this way that the Act, as applied to various factual situations, can retain the flexibility necessary to achieve the aim for which it was intended." *Pennsylvania Labor Relations Bd. v. Martha Co.,* 359 Pa. 347, 352, 59 A.2d 166, 168 (1948). This Court noted it is " 'well settled' that the word 'and' can mean 'or.' " *McIntyre v. Bd. of Supervisors of Shohola Township,* 150 Pa.Cmwlth. 15, 614 A.2d 335, 337 (1992).

Here, it was not error for the Board to conclude the "and" in the statutory language should be read as "or". The

Board's reasoning for reading "and" as "or" in this case is sound.

As the Board pointed out, there may be no jobs listed with the Department or with private agencies within a claimant's particular skill set, physical limitations, or geographic location. In those circumstances, it would be impossible for an expert witness to produce a market survey containing jobs from all three sources. The General Assembly cannot have intended the unreasonable result that such factors should render an expert's work incompetent.

■■■ Further, the interpretation invited by Claimant here is inconsistent with pre-existing common law on expert opinion. In Pennsylvania, there are no legal restrictions on the information relied upon by an expert, save that the information is made known to the expert at or before the hearing and that the information itself is admissible or is of a type reasonably relied upon by experts in the field. *See* Pa.R.E. 703. We are reluctant to accept a suggested interpretation which departs from pre-existing common law and imposes new legal requirements on the source and amount of information on which an expert relies. *See Com v. Miller,* 469 Pa. 24, 364 A.2d 886 (1976) (we may presume the General Assembly intended no change in prior law beyond that expressly declared). The preferred interpretation preserves pre-existing common law. The interpretation that the General Assembly listed examples of sources rather than mandatory sources is consistent with pre-existing common law and is preferred.

■■■ As discussed, it is consistent with legislative intent that the expert be permitted to include jobs from any one or a combination of the three listed sources, or other sources, as the expert sees fit, so long as those jobs are actually available to

the claimant.[6] In light of this construction, we conclude the Board did not err in determining Employer's market survey complied with 77 P.S. § 512(2) and its contest was reasonable. We therefore affirm.

### ORDER

AND NOW, this 6th day of August, 2004, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

**6.** Here, Employer's expert witness testified the jobs included in his market survey were from current newspaper ads and were vacant. R.R. at 52a–53a, 56a–57a.