IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy Walk,                                    :
                          Petitioner         :
                                             :
              v.                             :    No. 1325 C.D. 2024
                                             :    Submitted: July 7, 2025
Pennsylvania State University                :
(Workers' Compensation Appeal                :
Board),                                      :
                          Respondent         :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE MATTHEW S. WOLF, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  September 17, 2025


        Amy Walk (Claimant) petitions for review of the Workers' Compensation
Appeal Board's (Board) Order that, in part, affirmed the decision of a Workers'
Compensation Judge (WCJ) granting the Petition to Modify Compensation Benefits
(Modification Petition) filed by Pennsylvania State University (Employer) and
modifying Claimant's benefits to partial status based on the results of a labor market
survey (LMS). Claimant argues the Board erred because Employer did not meet its
burden of proving, through legally competent evidence, an increase in her earning
power in order to modify her benefits under Section 306(b)(2) of the Workers'

Compensation Act (Act).[1]  Upon careful review, Employer's evidence was legally competent to support the conclusion that it identified an open and available job within Claimant's vocational and physical capabilities thereby demonstrating an increase in Claimant's earning power under Section 306(b)(2), and, therefore, we affirm.

## I. BACKGROUND

In March 2018, Claimant sustained a work-related injury in the nature of a second-degree burn to her left forearm, which Employer accepted in an Amended Notice of Compensation Payable (NCP).  (Reproduced Record (R.R.) at 1a.) Claimant did not return to her time-of-injury position as a floater in one of Employer's dining halls, which paid $572 per week.  In May 2022, Employer issued a Notice of Ability to Return to Work (Notice) indicating that, based on the Independent Medical Examination (IME) by James Craig, D.O., Claimant was "able to return to work with some limitations." (*Id.* at 3a.)  Employer also had Claimant undergo a vocational interview with a vocational expert, Teri Soyster (Ms. Soyster), who performed a LMS and identified five vocationally suitable positions for Claimant, obtained medical approval of those positions from Dr. Craig, and advised Claimant of those positions.  Based on the results of the LMS, Employer filed the Modification Petition, seeking to reduce the amount of Claimant's benefits due to

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 512(2) (defining "earning power" and stating, in pertinent part, that partial disability status "shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth").

the general availability of work. (*Id.* at 17a-18a.) Claimant filed an answer denying the Modification Petition's material allegations.[2] (*Id.* at 21a.)

The WCJ held hearings at which Employer presented, relevantly,[3] the deposition testimony and reports of Ms. Soyster.[4] Ms. Soyster, who was familiar with the area in which Claimant resides and works, testified that she identified five light-duty or sedentary positions that met Claimant's vocational abilities—three as cashiers or associates with Wegmans, Aldi, and Trader Joes; a check-in clerk position with Planet Fitness; and a food delivery position for Wings Over Happy Valley. (*Id.* at 130a-31a.) The employers hire those positions regularly and were taking applications for those positions as of the date of the LMS, and Ms. Soyster sent Claimant and her counsel notice of those positions. (*Id.* at 129a, 132a-33a.) Ms. Soyster explained that "[t]hese [were] employers [she] ha[d] worked with in the past locally and in that area, and they especially now are really wanting to have employees, so they are going to make some accommodations, if necessary." (*Id.* at 128a.) Ms. Soyster also indicated Claimant had some other issues that made finding suitable positions difficult, but that these employers "were [] willing to allow [Claimant] to apply . . . if [Claimant] so desired." (*Id.* at 127a-28a.)

---

[2] Employer also filed a Petition to Suspend Compensation Benefits, seeking to suspend Claimant's benefits should it prove that Claimant's current earning power exceeded her time-of-injury wages. Because the WCJ did not accept Employer's evidence regarding positions that paid more than Claimant's time-of-injury wages, he did not suspend Claimant's benefits. For her part, Claimant filed a Petition to Review Compensation Benefits, asserting the description of her injury in the NCP was incorrect based on Dr. Craig's description of the injury following the IME, which the WCJ granted. There are no issues relating to these petitions before the Court.

[3] Employer also offered the deposition testimony of Dr. Craig, but that testimony is not relevant to the sole issue raised by Claimant in this appeal.

[4] Ms. Soyster's deposition testimony is found at Certified Record item 28 and pages 113a to 161a of the Reproduced Record. The WCJ summarized that testimony in findings of fact 32 to 43.

Ms. Soyster stated she often used the job posting website "Indeed" to pull information about jobs, which she considered a reliable source of actual job openings, but she did not always print out a particular ad. (*Id.* at 148a-49a, 151a-52a.) Ms. Soyster would then go visit the employer to confirm that information and see if accommodations could be made for a particular claimant. (*Id.* at 148a-49a.) In finding these positions appropriate, Ms. Soyster relied on her vocational interview with Claimant, medical information regarding Claimant's restrictions provided by Dr. Craig and Claimant's physician, and her actual observations of each position. (*Id.* at 119a-21a, 131a-32a.) Ms. Soyster opined that Claimant was capable of earning between $480 and $720 per week in the identified positions, and Ms. Soyster's report showed the Planet Fitness position paid $13.50 per hour for up to 40 hours per week or a total of $540 a week. (*Id.* at 134a; 199a.)

Claimant testified[5] that shortly after receiving notice of the identified jobs, she applied for all but one of the positions in person and discussed those positions with the employers at that time. (*Id.* at 95a-97a.) She applied for the position at Wegmans online and later discussed the position with a Wegmans representative by phone. (*Id.* at 95a-96a, 98a.) She did not hear back from any of the employers. (*Id.* at 97a-98a.)

Claimant also presented the deposition testimony of her vocational expert, James W. Primm, Jr. (Mr. Primm),[6] who opined that none of the positions identified by Ms. Soyster were appropriate because they exceeded Claimant's restrictions. (*Id.*

---

[5] Claimant testified before the WCJ, and her testimony is found at Certified Record item 18 and pages 50a to 72a of the Reproduced Record. The WCJ summarized Claimant's testimony in findings of fact 5 to 14.

[6] Mr. Primm's deposition testimony is found at Certified Record item 21 and pages 213a to 255a of the Reproduced Record. The WCJ summarized that testimony in findings of fact 44 to 50.

at 230a.) In particular, Mr. Primm testified the cashier positions would require continuous manipulation that was inconsistent with Claimant's limitations and the food delivery position required exposure to extreme hot and cold weather. (*Id.* at 220a-24a, 227a-29a.) He also opined the Planet Fitness position he found online, which was not the one identified by Ms. Soyster, was not appropriate because, based on his investigation, it would require Claimant to lift greater weight than authorized and be exposed to chemicals while cleaning exercise equipment. (*Id.* at 225a-27a.)

Reviewing the evidence, the WCJ credited the opinions of both Ms. Soyster and Mr. Primm in part. The WCJ credited Ms. Soyster's opinion regarding the suitability of the Planet Fitness position and that it was open and available to Claimant, and the WCJ credited Mr. Primm's opinion that the remaining positions were not suitable for Claimant. (WCJ Decision, Findings of Fact ¶ 53.) Thus, the WCJ concluded that Employer met its burden of proving that "Claimant was able to perform the position of check-in clerk at Planet Fitness at an average weekly wage of $540 as of July 7, 2022," and granted the Modification Petition. (WCJ Decision, Conclusion of Law ¶ 1.) On this basis, the WCJ modified Claimant's compensation benefits to $21.33 per week. (WCJ Decision, Order.)

Claimant appealed to the Board,[7] arguing, relevantly, that the WCJ's Decision approving the Planet Fitness job was erroneous because nothing in the record established that position was identified using "job listings with agencies of the [D]epartment," "[p]rivate job placement agencies," and "[a]dvertisements in the usual employment area," as required by Section 306(b)(2) of the Act, 77 P.S. § 512(2). According to Claimant, under this Court's decision in *Readinger v. Workers' Compensation Appeal Board (Epler Masonry)*, 855 A.2d 952 (Pa.

---

[7] Employer cross-appealed, but the resolution of that appeal is not before the Court.

5

Cmwlth. 2004), a vocational expert must use one of the three sources identified in Section 306(b)(2) in finding positions and, if not, their opinion is not legally competent. The Board found that Claimant misinterpreted *Readinger* and Section 306(b)(2), which supported the WCJ's findings. (Board Opinion at 11.) The Board explained to hold otherwise, so that vocational experts could only use jobs postings found in the sources identified in Section 306(b)(2), would be an absurd result. (*Id.*) The Board also rejected Claimant's argument that the Planet Fitness position was not open and available because it was not listed in one of the statutory sources, noting Claimant testified that she applied for the position and spoke to someone at Planet Fitness about the position when she did so. (*Id.* at 12.) Accordingly, the Board denied Claimant's appeal and upheld the WCJ's grant of the Modification Petition.[8]

Claimant now petitions this Court for review.[9]

## II. DISCUSSION

On appeal, Claimant raises one issue. Claimant argues that Ms. Soyster did not identify the Planet Fitness position using one of the sources provided for in Section 306(b)(2). Therefore, Claimant maintains, that position could not be considered as a matter of law, and Employer did not meet its burden of proving Claimant's "earning power." (Claimant's Brief at 14.) According to Claimant, this position is supported by *Readinger*, 855 A.2d at 956-57, which, in her reading, requires the use of at least one of those methods.

---

[8] Commissioner Gabig concurred in the result only.

[9] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

6

Employer responds that the WCJ's findings as to the Planet Fitness position are supported by competent evidence—Ms. Soyster's credited testimony and Claimant's own testimony. According to Employer, Claimant misreads *Readinger* and Section 306(b)(2), and her preferred interpretation would create the absurd result of having to ignore otherwise competent expert testimony reflecting that suitable work is open and available to a claimant, which cannot be what the General Assembly intended in Section 306(b)(2).

An employer may file a modification petition when it seeks to change a claimant's benefit status or reduce a claimant's benefit amount. *Rebeor v. Workers' Comp. Appeal Bd. (Eckerd)*, 976 A.2d 655, 658 (Pa. Cmwlth. 2009). "An employer who files a modification petition to change a claimant's benefits from total to partial may succeed if the employer establishes that the disabled claimant has 'earning power.'" *Id.* (citation omitted). Section 306(b)(2) explains that

> "[e]arning power" shall be determined by the work the employe is capable of performing and **shall be based upon expert opinion evidence <u>which includes</u> job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area**. Disability partial in character shall apply if the employe . . . can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. . . . . In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the [D]epartment [of Labor & Industry (Department)] through regulation.

77 P.S. § 512(2) (emphasis added).

The jobs identified must be actually open and potentially available. *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 843 (Pa.

7

2013). To qualify as available, the positions identified as proof of a claimant's earning power must "remain open until such time as the claimant is afforded a reasonable opportunity to apply for them." *Id.* at 845. Evidence offered by a claimant, such as testimony about "an in-person application during which information is exchanged" or "evidence of follow up communications between a claimant and a prospective employer which prompt acts or inaction by a claimant" can support a finding that a position is open and available. *Smith v. Workers' Comp. Appeal Bd. (Supervalu Holdings PA, LLC)*, 177 A.3d 394, 404 (Pa. Cmwlth. 2018). If an employer shows the availability of suitable employment that a claimant is capable of performing, found through a LMS, the employer may change the status of the claimant's benefits from total to partial disability. *Diehl v. Workers' Comp. Appeal Bd. (IA Constr.)*, 972 A.2d 100, 103 (Pa. Cmwlth. 2009) (en banc).

"When, as here, the issue is the proper interpretation of a statute, it poses a question of law; thus, our standard of review is *de novo*, and the scope of our review is plenary." *Phoenixville Hosp.*, 81 A.3d at 838. We begin with the precept that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1921(a). In general, the best indication of legislative intent is the statute's plain language. *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 1149 (Pa. 2009). If the language of the statute is plain and clear, we simply apply it; we may not disregard a statute's plain language in order to pursue the statute's spirit. 1 Pa.C.S. § 1921(b).

Applying these principles here, we discern no error or abuse of discretion in the finding that Employer met its burden of proof on the Modification Petition using the Planet Fitness position and Ms. Soyster's credible testimony regarding the same.

8

Section 306(b)(2) provides that earning power is to "be based upon expert opinion evidence **which includes** job listings with agencies of the [D]epartment, private job placement agencies and advertisements in the usual employment area." 77 P.S. § 512(2) (emphasis added). Our Supreme Court has held that, when used in a statute, the word "includes" is a word of enlargement, not of limitation. *Pa. Hum. Rels. Comm'n v. Alto-Reste Park Cemetery Ass'n*, 306 A.2d 881, 885-86 (Pa. 1973) (citation omitted). Moreover, the term "include" is defined as "[t]o contain as **a part of something**" and that "[t]he participle *including* typically **indicates a partial list**." "Include," Black's Law Dictionary (12th ed. 2024) (bold emphasis added). Thus, under the plain and unambiguous language of Section 306(b)(2), the words "which includes" reflect the General Assembly's intent that the methods of identifying jobs used therein were provided as **examples**, **not** the **exclusive** means of doing so.

We agree with the Board and Employer that *Readinger* does not support Claimant's position but supports the WCJ's Decision. There, we held that an employer's labor market survey did not have to identify jobs using all, or any, of the three methods identified in Section 306(b)(2) to be valid. *Readinger*, 855 A.2d at 954. Relying on the unambiguous use of "which includes" in Section 306(b)(2), this Court explained that "by using the term 'includes' followed by three items, the legislature offered examples of sources from which experts could obtain job listings, **not a restrictive and mandatory list**. The expert is free to use any of those three sources, **or other sources**, in [the] market survey." *Id.* at 955 (emphasis added).

The Court further observed that the contrary interpretation was

> inconsistent with pre-existing common law on expert opinion. **In Pennsylvania, there are no legal restrictions on the information relied upon by an expert**, save that the information is made known to the expert at or before the hearing and that the information itself is admissible or is of a type reasonably relied upon by experts in the field.

*See* [Pennsylvania Rule of Evidence 703,] Pa.R.E. 703. We are reluctant to accept a suggested interpretation that departs from pre-existing common law and imposes new legal requirements on the source and amount of information on which an expert relies. *See Com*[*monwealth*] *v. Miller*, . . . 364 A.2d 886 ([Pa.] 1976) ([W]e may presume the General Assembly intended no change in prior law beyond that expressly declared[.]). The preferred interpretation preserves pre-existing common law. The interpretation that the General Assembly listed examples of sources rather than mandatory sources is consistent with pre-existing common law and is preferred.

. . . **[I]t is consistent with legislative intent that the expert be permitted to include jobs from any one or a combination of the three listed sources, or other sources, as the expert sees fit**, so long as those jobs are actually available to the claimant.

*Id.* at 956 (emphasis added).

Based on the language of Section 306(b)(2) and *Readinger*, Ms. Soyster was not limited to finding jobs for the LMS using the three methods set forth in the Act. Here, Ms. Soyster credibly testified that she was **personally familiar with these employers in Claimant's area and had worked with them previously**. (R.R. at 128a.) Ms. Soyster knew these employers **hire** the identified positions **regularly** and **were taking applications for those positions** as of the date of the LMS. (*Id.* at 129a, 132a-33a.) Ms. Soyster explained that these employers "**especially now are really wanting to have employees**, so they are going to make some accommodations, if necessary." (*Id.* at 128a (emphasis added).) According to Ms. Soyster, part of her process in identifying jobs is to go visit the employer to **confirm** that information and **see if accommodations could be made** for a particular claimant. (*Id.* at 148a-49a.) Thus, Ms. Soyster used her own knowledge and connections with these particular employers in Claimant's area, and knowledge that they had positions available and offered accommodations to injured workers, to identify the positions contained in the LMS. This is not inconsistent with

10

Section 306(b)(2) or *Readinger*. Indeed, holding that a vocational expert cannot rely on their personal knowledge of and connections with potential employers to identify open and available positions for claimants would be an absurd result, which we are to assume the General Assembly does not intend. Section 1922(1) of the SCA, 1 Pa.C.S. § 1922(1).

Ultimately, Ms. Soyster's testimony, combined with Claimant's testimony about actually applying for the position at Planet Fitness and speaking with someone about the position, (*id.* at 95a-97a), is legally competent evidence that supports the WCJ's conclusion that Employer established that it identified in the LMS a job that was open and available to Claimant for a reasonable period of time. *Phoenixville Hosp.*, 81 A.3d at 845; *Smith*, 177 A.3d at 404; *Readinger*, 855 A.2d at 954-57. Accordingly, we discern no error in the Board's affirmation of that conclusion and the grant of the Modification Petition on that basis.

## III. CONCLUSION

Because Employer met its burden of proving, through legally competent evidence, that it identified an open and available job within Claimant's vocational and physical capabilities and, therefore, demonstrated an increase in Claimant's earning power under Section 306(b)(2), the grant of Employer's Modification Petition was not in error. Accordingly, the Board's Order upholding the WCJ's Decision is affirmed.

_____
RENÉE COHN JUBELIRER, President Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy Walk,                                          :
                   Petitioner      :
                              :
           v.                              :      No. 1325 C.D. 2024
                              :
Pennsylvania State University                      :
(Workers' Compensation Appeal                      :
Board),                                            :
                 Respondent      :

# **O R D E R**

    **NOW**, September 17, 2025, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge